THAMES v. CLESI et al.    (No. 402.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 12, 1918. Rehearing Denied Jan. 8, 1919.)

1. APPEAL AND ERROR �köⁿ725(1) — ASSIGNMENTS OF ERROR — SUFFICIENCY — RULE OF COURT.

Notwithstanding rules 24 and 25 of Courts of Civil Appeals (142 S. W. xii), an assignment of prejudicial error in sustaining defendant's plea of limitation in an action on quantum meruit, not affirmatively specifying the grounds of error, would be considered, in view of the liberal rule adopted in reference to the briefing of cases.

2. CONTRACTS �köⁿ346(12)—VARIANCE.

A cause of action upon a quantum meruit is different from a cause of action on an express contract, and, unless the causes are pleaded in the alternative or in different counts, evidence cannot be introduced on the cause not so pleaded.

3. JUDGMENT �köⁿ252(4)—PLEADING — PRAYER FOR ALTERNATIVE RELIEF.

A judgment on either a cause of action on a quantum meruit or on an express contract

cannot be sustained unless that particular cause of action is pleaded in the alternative or in different counts, and a mere prayer for relief in the alternative is not sufficient.

**4. LIMITATION OF ACTIONS ☞127(13) — AMENDMENT.**

Where the petition contained a declaration only upon an express contract, with a mere plea in the prayer in the alternative for recovery on quantum meruit, the court properly sustained an exception to an amended petition pleading a quantum meruit in the alternative, filed more than two years after the cause of action accrued.

**5. APPEAL AND ERROR ☞272(1)—PEREMPTORY INSTRUCTION—REVIEW—EXCEPTIONS.**

To have a peremptory instruction reviewed, the giving of the instruction must be excepted to at the time and before it is given to the jury, and unless a bill of exceptions is reserved the giving of the instruction cannot be reviewed.

**6. APPEAL AND ERROR ☞544(3) — PEREMPTORY INSTRUCTION—REVIEW—FUNDAMENTAL ERROR.**

The giving of a peremptory instruction does not raise the question of fundamental error to be reviewed by the court in the absence of bill of exceptions attacking the giving of such instruction.

**7. CONTRACTS ☞323(3)—NONPERFORMANCE—QUESTION FOR JURY.**

In a suit to recover under an express contract to lay tile floors in a neat and workmanlike manner, evidence for plaintiff to show that the floor was laid in a neat and workmanlike manner, or substantially in that manner, *held* insufficient to raise an issue for the jury, so that peremptory instruction for defendant was proper.

**8. TRIAL ☞139(1)—DIRECTED VERDICT—EVIDENCE.**

It is the court's duty to instruct a verdict even though there be slight testimony, if its probative force is so weak that it only raises a mere surmise or suspicion of the facts sought to be established, such testimony falling short of being any evidence.

**9. CONTRACTS ☞295(1)—SUBSTANTIAL PERFORMANCE.**

Where there was no substantial compliance with a contract to lay tile floors in a neat and workmanlike manner, and any cause of action on quantum meruit or an implied contract having been barred by the two-year statute of limitations, plaintiff could not recover.

Appeal from Jefferson County Court; D. P. Wheat, Judge.

Suit by T. W. Thames against J. A. Clesi and others. Judgment for defendants by direction, and plaintiff appeals. Affirmed.

Smith & Crawford and B. F. Pye, all of Beaumont, for appellant.

Orgain, Butler & Bolinger, of Beaumont, for appellees.

BROOKE, J. On May 25, 1915, appellant filed his petition in the county court at law of Jefferson county, seeking a recovery against appellees for material furnished and labor done in September, 1914, under a contract entered into on July 24, 1914, to furnish material, and to place one inch or one and one-eighth inch floor tile, with border, in the Crosby House Barber Shop, in the city of Beaumont, for the sum of $288, which work was to be done in a neat and workmanlike manner. On December 10, 1917, appellant filed his second amended original petition, wherein he pleaded the said contract, and the furnishing of said material and the performance of said labor, and prayed for a judgment in the sum of $288, the contract price, and for the sum of $20 as attorney's fees. Alternatively appellant prayed that—

"If it should appear upon the trial of this cause that plaintiff did not substantially comply with said contract, then and in that event plaintiff prays that he recover against defendants, and each of them, whatever amount it should appear that his labor and material furnished was reasonably worth on quantum meruit basis."

Appellees urged special exceptions, as follows: (1) To appellant's prayer for the value of services rendered on quantum meruit, urging that the same was barred under the statute of two years' limitation; (2) that an action upon quantum meruit would not lie in favor of appellant because of the fact that an action was sought upon an express contract, and that a recovery on quantum meruit basis could be only in the event there is no written or express contract, and no recovery in law could be had upon an implied contract based on quantum meruit where plaintiff has failed to comply with the terms of an express contract.

The court sustained the two special exceptions urged by appellees, and, after hearing the evidence and argument of counsel, peremptorily instructed the jury to return a verdict in favor of the appellees, defendants below, because of the fact that, as a matter of law, appellant had failed to. show strict compliance with the contract; to which action of the court appellant duly excepted in open court, and has properly perfected his appeal to this court.

[1] At the outset appellees object to the consideration of appellant's first assignment of error because such purported assignment is not in accordance with rules 24 and 25 (142 S. W. xii), in that such purported assignment of error does not distinctly specify the grounds of error, and does not particularly set forth the error complained of.

The assignment seems to be simply this: That the court erred to the prejudice of plaintiff in sustaining defendants' plea of limitation to plaintiff's cause of action on

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

quantum meruit. It does not affirmatively appear in what way error was committed, if any, and is too general in its terms, etc. Complaint is also made that the first proposition is not germane to the first assignment of error, and that the proposition is simply an abstract statement of the law, and as such ought not to be considered by the court; and complaint is made also of the consideration of appellant's first proposition under the first assignment for the reason that it is urged there is not any sufficient statement thereto; that the statement thereto is not sufficient to explain and support the proposition.

This court has adopted a liberal rule with reference to the briefing of cases, and we are not disposed to be technical in that respect. Therefore the first assignment will receive our attention.

[2-4] It is urged with respect to the first assignment of error that appellant not having alleged and set out facts constituting a cause of action on the basis of quantum meruit in a separate count, in the alternative, in a suit on an express contract, there could be no recovery on a basis of quantum meruit. Paragraph 1 of the petition sets out that appellant entered into a contract with appellees to furnish material and labor in laying a tile floor in defendants' barber shop; the material was to be one and one and one-eighth tile, with border, work to be done in a neat and workmanlike manner, for the sum of $288. In paragraph 2 of the petition appellant sets out that he performed the work according to the contract, and that the appellees owed him $288, with 6 per cent. interest from January 1, 1915, and asked for $20 attorney's fees. In the prayer for relief, concluding his prayer, appellant prayed that if it should appear that plaintiff did not substantially comply with said contract, then and in that event plaintiff prayed that he be permitted to recover against appellees and each of them whatever amount it should appear that his labor and material furnished was reasonably worth on quantum meruit basis.

The cases of Jones v. Holtzen, 141 S. W. 121, Morrison v. Bartlett, 131 S. W. 1146, Broussard v. South Texas Rice Co., 120 S. W. 587, Felton v. Talley, 31 Tex. Civ. App. 336, 72 S. W. 614, and Wanhscaffe v. Pontoja, 63 S. W. 663, hold that a cause of action on a quantum meruit is different from a cause of action on an express contract, and that unless these causes of action are pleaded in the alternative, or different counts, evidence cannot be introduced on that cause of action not so pleaded, nor would a judgment on either of such causes of action be sustained unless that particular cause of action is so pleaded; and it is not sufficient that there is a mere plea in the prayer for relief in the alternative, but that a cause of action shall be raised by separate counts specially pleaded, as a basis for the prayer in the alternative; for, unless there was a plea as a basis for such prayer, there would be a prayer without a basis in the plea. An examination of plaintiff's petition will show that there was no separate count or pleading in the alternative raising the question of a recovery on the basis of quantum meruit, but a declaration only upon an express contract, with a prayer in the alternative for a recovery on the basis of quantum meruit, in the event the court should find there was not a substantial compliance with the contract, which prayer has no basis in plaintiff's pleading, and is supported by no count. The court having sustained appellees' exceptions to appellant's purported plea on the basis of quantum meruit, on the ground that the bar of two years' statute of limitation had run against such purported plea at the time of filing it, there was, in our opinion, no error in the court's refusal to consider such purported pleading on quantum meruit. See G. R. Scott, Boone & Pope v. Willis, 194 S. W. 220; S. A. & A. P. Ry. Co. v. Bracht, 157 S. W. 269; M., K. & T. Ry. Co. v. Ryan, 170 S. W. 858; Phœnix Lumber Co. v. Houston Water Co., 94 Tex. 456, 61 S. W. 707; Booth v. Packing Co., 105 S. W. 46. In the case of G. R. Scott, Boone & Pope v. Willis, supra, on July 27, 1916, more than two years after the cause of action had accrued, appellant filed a second amended petition, and, in addition to declaring on an express contract as against the Sidbury Lumber Company and Byron Willis, appellant set up in the alternative an implied contract to pay the attorney's fees. That part of the pleading as to the implied contract was accepted to as being barred by the statute of limitation of two years, and the exception was sustained. The party appealing assigned error to the holding of the court, and it was held that these were two separate and distinct causes of action, and that the pleading that would support one would not support the other, and the statute of limitation had run against the plea on an implied contract, and that the exception was properly sustained. In the case of S. A. & A. P. Ry. Co. v. Bracht, supra, the court set out its reasons at length that a suit upon an express contract is different from a suit on a quantum meruit or an implied contract, and that the proof that will sustain the one will not sustain the other, and that inasmuch as they are different causes of action, and demand different character of proof, a failure to plead one until after the two years' statute of limitation has run, where an exception raising the question of limitation is presented, such exception will be sustained and a recovery will be barred. Such seems to be the ruling opinion in Phœnix Lbr. Co. v. Houston Water Works, supra,

and in M., K. & T. Ry. Co. v. Ryan, supra. The appellant did not, in a separate count, allege a cause of action on the basis of quantum meruit; but in his prayer for relief prayed that, if the court found there had not been a substantial compliance with the contract, then and in that event he be permitted to recover the reasonable value of his labor and material furnished. The cases set out above all hold that it takes a different character of proof to sustain a plea on an express contract from that to sustain a plea on an implied contract or on the basis of quantum meruit. A contract having been entered into on July 24, 1914, and plaintiff not having sought a recovery on a prayer for a recovery on the basis of quantum meruit until December 10, 1917, the statutory period of two years' limitation had run against such cause of action, if any he had, and the same was barred and the court properly sustained the defendants' exception to the purported plea of quantum meruit filed at too late a date by plaintiff.

We have diligently gone over the authorities cited by appellees supporting the principles announced, and we are of opinion that the action of the lower court was authorized, and there was no error in same. Therefore the assignment of error is overruled.

[5] The second assignment of error is as follows:

"Because the court erred to the prejudice of this plaintiff in instructing the jury to return a verdict in favor of the defendants when the evidence authorized and warranted the submission of the facts to the jury on the issues involved, since there was ample evidence to the effect that said contract was complied with by plaintiff."

It is urged that the court not consider the second assignment of error, for the reason that such assignment does not comply with rule 25, which requires that such assignment must refer to that portion of the motion for new trial in which the error is complained of, and it is urged also that the court should not consider the statement under said second assignment. We have already announced the rule that this court has heretofore been liberal in the practice with reference to the briefing of cases considered by us. We will say, however, that in the case of Munroe v. Munroe, 54 Tex. Civ. App. 320, 116 S. W. 878, it was held that a statement which does not point out the portions of the petition excepted to, and does not set out the substance of the exceptions as required by the rule, will not be considered.

In order to have the giving of a peremptory instruction reviewed by the court the giving of the instruction must be excepted to at the time, and before same is given to the jury, and, unless a bill of exception is reserved, the question of giving the instruc-

tion cannot be reviewed. See Needham v. Cooney, 173 S. W. 979; Yates Mercantile Co. v. Farmers' Guaranty State Bank of Jacksonville, 194 S. W. 1157; Carr v. Pecos Valley State Bank, 189 S. W. 988; G., T. & W. Ry. Co. Dickey, 108 Tex. 126, 187 S. W. 184.

[6] It seems, therefore, that the giving of a peremptory instruction does not raise the question of a fundamental error to be reviewed by the court, in the absence of the bills of exception attacking the question of giving instructions.

[7-9] The testimony of the plaintiff and the witness Blakeley, only raising a surmise that the material furnished and labor done was done in a neat and workmanlike manner, and all the other testimony of the witnesses, and the exhibits of the floor, showing conclusively that the work was not performed in a neat and workmanlike manner, and that the performance in a neat and workmanlike manner was to be the very essence of the contract, it is urged that there was no issue raised to be passed upon by the jury.

T. W. Thames, witness for plaintiff, testified:

"I also told him that they could have the floor by Tuesday morning."

"When a tile floor is properly laid, according to pattern, there should not be any cracks between the separate sheets of tile that are joined together. As to whether there should be any more cracks between the point where two sheets of tile meet than there is between any two tiles in a sheet, there is a reasonable amount of cement, you see, that has to work in between the tiles. There should not be any large cracks in the floor. Those cracks ought not to be cracks visible to the naked eye; in other words, it ought to present a solid, complete, and uniform surface, when the floor is properly laid. * * * It is a fact that I came back and sent a man six or seven times to patch on that floor. It is a fact that finally I left some of my tools there, I never did get them; never came back after them. I patched until I got tired, and saw I wasn't going to get any money, and I quit."

"It is a fact that one of the miters in this tile floor, place where two corners meet in the floor, there, is all out of plumb. I do not know whether it is unsightly or not; it is there yet. * * * When a tile floor is properly laid under ordinary conditions, it is a perpetual proposition if you give it time to set."

"As to whether this miter at the same time was out of plumb, and there were irregularities in that floor in certain places right after I left it, they were there, they are there now."

George M. Blakeley, witness for plaintiff, on cross-examination testified:

"In the proper laying of a tile floor the tiles ought to come up close together, if they are on paper as they ought to be; they ought to come up together. As to whether those sheets of tile ought to come as close together where they join, ought to be close together as the individual tiles on an independent sheet, if the floor is properly laid, they always try to get them up together."

A. Babin, witness for defendants, testified on direct examination:

"If a tile floor is properly laid, there should not be any space between the points where the strips of tile join each other larger than the space between the individual tile."

"At the juncture of the border, two lines of the border of that tile floor, in the southwest corner of that building, the border does not properly connect up. The border at that place should have been mitered together instead of running one into the other. At that place, instead of mitering, one runs past the other, instead of coming up and making an angle. It is not like it should be; the border runs into the side border. * * * The way that border is put in makes an unsightly place in that room; it looks bad. In other words, it is not properly laid at that point. I noticed other places in that floor where, in my judgment, that tile was not properly laid. There is some defective point in there where the tile was not properly connected —split too much; where the sheets come together they are split apart. That is a general condition in that tile floor and other places in the floor as laid; this space as shown in that picture, between the tiles, is what I have reference to. Proper tile setting would not have left those spaces. * * * That is not a neat job."

"That is an unsightly place where that border is; it is bad. Proper tile setting would not have allowed that to occur. The border along the east side of that floor is lower in some places than the tiles composing the floor. * * * If a workmanlike job means a job which is layed with perfection according to the skill required in that sort of work, I would not say that this was a workmanlike job."

A. R. Willard, witness for defendants, testified on direct examination:

"It isn't what you call a good job."

R. A. Heartfield, witness for defendants, testified on direct examination:

"There was some places where the tile was poorly matched, and other places there was cracks—that is seams, not close together; in other places there was some loose tile."

On redirect examination this witness testified:

"As to whether, in the condition this tile was in, having cracks in certain portions of the floor, defects in this border in other portions, loose tiles in other portions of the floor, and other defects such as you have asked me about, in my opinion it would be necessary to tear that floor out and put a new floor in to do a neat and workmanlike job. Well, now, as far as part of that question, I will say, for instance, loose tile, you can replace your loose tile, in fact, if there are several of them, if they fit properly, you could replace that all right; but if a glaring defect through several parts of the main floor, you couldn't carry out a design, unless you relaid the whole floor. Taking the floor as a whole, in order to make a first-class job, considering these cracks in different parts of the floor where the tiles don't match up, it would be practically necessary, I should think, to remove that whole floor and put down a new one."

J. A. Clesi, witness for defendants, testified:

"I am absolutely positive that they completed the laying of that tile on Sunday night. * * * We moved in Tuesday morning, just between seven and seven-thirty, when the men came on to work; we all helped and carried the chairs in. We did not move the big cabinet that the barbers keep their hats and coats in at that time. It stayed out there for nearly a week." "We moved the iron safe back, I should imagine between Thursday or Friday of the following week. * * * None of that furniture was dragged over the floor." "When that floor was turned over to me, well the front part of it, the tiles were very far apart. There was a hill there, not level; in fact, I had a time to push the door shut; couldn't hardly get it shut; it fit jamb up against the floor. We had to sort of lift the door to shut it. * * * Before the tile floor was put in I could shut that door easily. * * * Well, the condition of the floor was in bad shape. The border was crooked, zigzag; the miter in bad shape. * * * It don't meet like a corner; lacks a quarter of an inch or more of meeting. There were places in that floor at that time where there were cracks such as shown in this picture here between those tiles. There are a whole lot more cracks like that in there than this picture shows. They are scattered throughout the whole floor. On the center east there is lots of loose places like that; under the settees it is all loose; all the tile is all off. Along the east line of the border of that room it don't meet. I can get hold of it like this; I can grab—the border is so much lower I can grab it just like that. It is lower than the floor. There are places where the tiles don't meet the border; there are spaces between. That space is all the way from one-eighth to one-fourth or one-half an inch wide. * * * By actual measurement, it is four feet from this place in the tile floor where most of the tiles have come loose to that wash basin. * * * I don't believe that the first tile that came up with the broom when the boy was sweeping was over a week. Mr. Thames came up when the boy was sweeping with one of these here brooms, and I heard the noise, and I looked and it was one of the tiles. It came up when sweeping. They continued to do that. As to how big a space has come up in the tile floor from that time to this—at one time there was a space I measured that was about 20 inches long. It wasn't exactly square; and about 14 inches wide, perfectly bare. That space came up shortly after Mr. Thames quit repairing it. * * * I never did accept that floor. He never turned it over to me as finished. * * * The floor looks very unsightly. Within two weeks after it was laid, why that front part was just as bad, and this other place, just as soon as the first tile was swept off and it became loose it was just as bad as it is now. These tiles have never done anything but come loose in the ordinary use of that barber shop. The best part of that floor is a strip where the barber chairs set. The barber walks around that chair all the time; the biggest part of his work is done there. * * * There are places under the settees

where there isn't any walking where the tiles have come loose, back against the wall. * * * In getting these repairs and this floor laid, as to whether it was my idea to get the shop in nice shape, I painted everything white, and wanted a nice floor. The floor was out of harmony with the rest of the work after we got it done. Everybody comes in wants to know who done it."

Henry Weber, witness for the defendants, testified that the way the work was put down that he would not call it a first-class job, and that he would not call it a neat and workmanlike job.

Paul Heartman, witness for defendants, testified that the general appearance of that floor shows that it is not a neat and workmanlike job.

T. Albert, witness for defendants, testified:

"I am engaged in the tile and terrazzo business, and have been engaged in said business since I have been in the United States, which is eleven years, and I have been engaged in the same line of work all that time. I am now, and have been, engaged in the business of laying tile floors and other tile work for the past eleven years, and have had eleven years' experience in that line of work. * * * I have seen the tile floor in a certain room in a building in the city of Beaumont, Texas, used and occupied by the Crosby House barber shop, and inspected it when I was in Beaumont. My attention was attracted because the tile was entirely out in a space about two feet square, and I made the remark to the barber who was shaving me that the tile was not properly set, as it was not. Yes; I have just stated that in a space about two feet square the tile was out; then I sounded several places in the floor, and found that the tile was loose in several places. There were defects in that floor—the keys did not match, the joints did not match and were cut off, and they had put in some pieces in where the whole tiles were supposed to go. The cause of the defects was because, in my judgment, it was not laid by skilled mechanics. Yes; there was some of the tiles lost and gone; there was also some cracks in some of the floor, and the floor was rather of the ocean wave effect. I do not remember exactly about the pattern. Yes; there was places in said floor where there was space between the tile composing the floor and the cement floor underneath; they were caused on account of the fact that the floor was not laid in a workmanlike manner. If it had been laid in a skillful manner, such places would not have existed. The reason I know that such places existed in said tile floor is because I saw it and sounded the floor. The way that floor should have been treated before said tile floor was laid thereon, in order to cause said tile floor to adhere closely to said cement floor in all places, there should have been an inch and a quarter bedding between the cement floor and the tile composed of two parts and a half sand and one part Portland cement. In my opinion individual tiles in a tile floor that is properly laid will not come loose within six months or a year, simply by the ordinary use to which said floor would be subjected in a barber shop or other public places, if it is properly set.

* * * The job on the tile floor, in my opinion, in the Crosby House barber shop, in the manner which it was laid and as it appeared from my inspection of same, was a bad job; to use a slang expression, I would call it a 'bum' job. I will say, further, that the work on said tile floor was not done in a neat and workmanlike manner; will also state that the tile on that floor was not neatly laid; neither was it laid in a workmanlike manner; neither was said tile floor laid in a manner such as tile floors are usually laid by skillful tile men; neither was the job of making said tile floor well executed; neither was it done in a manner worthy of a skillful workman. The tile floor I am referring to could not be patched or repaired in such a manner as to make same a neat and workmanlike job, and so as to remedy the defects in the same, which I have heretofore pointed out, because you could not patch a floor so poorly laid as this one was, and the only thing that could be done for it to be said that same was properly laid, and that it constituted a neat and workmanlike job, would be to take it up and put in a new floor, and in order to make the job a neat and workmanlike job would be to take it up and relay the whole thing, because the job was so poorly done in the first place."

J. S. Meriwether, witness for plaintiff, testified:

"I didn't see the floor when it was first laid, and therefore I couldn't say whether that job, as a whole, was a first-class job of tile work; of course, at the time I saw it, I couldn't say that it was a first-class job."

It has been held in Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059, that it was the duty of the court to instruct a verdict, even though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the facts sought to be established; such testimony, in legal contemplation, falling short of being any evidence, it would be the duty of the court to determine whether or not the testimony had more than that degree of probative force.

In the case of Malone v. National Bank of Commerce of Kansas City, Mo., 162 S. W. 369, the court held that the fact that a party is an interested witness, that fact alone should not be the occasion for discarding his testimony, where there is no other testimony or physical facts which cast doubt or suspicion upon the truthfulness of the interested witness' testimony.

In the case at bar the testimony of all the witnesses except that of plaintiff himself is to the effect that the work was not done in a neat and workmanlike manner; also an observation of the exhibits, viewed in the light of the testimony of all the witnesses except the plaintiff himself, and as set out heretofore, conclusively shows that the minds of parties could not differ that the work was not done in a neat and workmanlike manner, or that it was substantially done in a neat and workmanlike manner,

the witness Heartfield having testified that to put the floor in a neat and workmanlike condition it would be necessary to take up the entire tiling and to relay the whole floor. Such is the testimony also of T. Albert. There not being a substantial compliance with the terms of the contract, the causes of action, if any he had, on the basis of quantum meruit, or on an implied contract, having been barred by the statutory period of two years' limitation, he could not recover upon the contract, under the decision of Childress v. Smith, 90 Tex. 610, 38 S. W. 518, 40 S. W. 389. It seems that, prior to the time the appellant in this cause made a contract with the appellees to place a tile floor in the barber shop, there was already a floor made of concrete and covered with linoleum, and the object of the appellees in having a tile floor laid was for the artistic effect and for the neat appearance that it would make, and for that reason the contract specially stipulated for a neat and workmanlike job, and, the same failing in being a neat and workmanlike job, the contract failed in its entirety; and inasmuch as the tiling was mismatched, improperly mitered, and there were cracks between the tiling, and the tiling came up in such a manner that in order to have the work done in a neat and workmanlike manner it would be necessary to remove all the tiling and to relay the floor, this cost of repairing would be about the price called for in the original contract. In this connection, see Manthey v. Stock, 133 Wis. 107, 113 N. W. 443.

Under the facts of this case, and under the pleadings and the testimony, there has been no error committed by the court such as would require a reversal of this cause. As said in the Joske v. Irvine Case, above, a mere surmise that does not amount to testimony in a case, in legal testimony, falling short of being any evidence, it would be the duty of the court to determine whether or not the testimony had more than that degree of probative force. In this case there was only the testimony, in a way, of the plaintiff, from which might have arisen a surmise that the job had been completed in a neat and workmanlike manner. This is shown, not only by the fact that he endeavored to patch up and render complete the job originally contracted for, but the further fact that after many times he became satisfied that it was impossible, and that he left his tools there and quit.

As above stated, we find that there has been no error complained of which, in our judgment, should cause a reversal of this cause, and the judgment of the lower court is therefore affirmed.

HIGHTOWER, Jr., C. J., did not sit in this case.