**KUHN et al. v. SHAW.  (No. 593.)**

(Court of Civil Appeals of Texas. Beaumont. June 5, 1920. Rehearing Denied June 23, 1920.)

1. **Brokers ⬅️87—Entitled to commission on value of oil royalty received at sale.**

Where the jury found that plaintiff was entitled to one-tenth of the proceeds of a sale for his services in negotiating it, he was entitled to one-tenth of the value of an oil royalty which the vendor received from the sale as well as one-tenth of the cash received.

2. **Contracts ⬅️221(3)—Credit not allowed for payments plaintiff agreed to make on unperformed condition.**

In an action to recover for plaintiff's services in land transactions for defendant, where plaintiff had agreed to pay defendant the amount which defendant had paid on plaintiff's notes prior to plaintiff's discharge in bankruptcy on condition that plaintiff recover the interest in the property he sued for, it was not error to refuse to credit defendant with such payments where plaintiff recovered only a much smaller interest.

3. **Limitation of actions ⬅️127(13)—Amended petition first stating implied contract cannot be filed more than two years after accrual.**

Where the original petition stated a cause of action on express contract, plaintiff could not recover on an implied contract and quantum meruit set up in an amended petition which was not filed until more than two years after the accrual of the cause of action upon quantum meruit.

4. **Work and labor ⬅️22—Petition held to state action on implied not express contract.**

A petition alleging that plaintiff performed services at request of defendant and the reasonable value of such services states a cause of action on implied contract, though it also pleaded as a conclusion that thereby defendant became indebted to plaintiff on an express contract.

5. **Appeal and error ⬅️171(3)—Appellant cannot rely on interpretation of petition not raised below.**

Where appellant's contention was that the supplemental petition alleging an implied contract was barred because the original petition alleged an express contract, he cannot rely on the construction of the original petition as alleging a cause of action for recovery of property and for conversion of proceeds of the sale.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Action by Carey Shaw against G. M. Kuhn and others. Judgment for plaintiff against defendant Kuhn, and the named defendant appeals. Affirmed.

Walter H. Walne, Rodman S. Cosby, and Baker, Botts, Parker & Garwood, all of Houston, for appellant.

Gill, Jones, Tyler & Potter, of Houston, for appellee.

WALKER, J. This suit was filed by Carey Shaw on the 1st day of March, 1918, against G. M. Kuhn and the Union National Bank of Houston. Omitting formal allegations, the substance of his original petition was as follows:

First, the formal allegations as to name and residence of the parties; second, that about the 25th day of April, 1918, acting for himself, defendant Kuhn, and one William Giles and one Teolin Pillot, he purchased certain property in Harris county, Tex., which we will refer to as the Goose creek property; third, that on or about the 6th day of June, 1916, he purchased in the name of Kuhn ten acres of land in Chambers county, which we will refer to as the "Barber tract"; fourth, that on or about the 1st day of January, 1918, plaintiff was in the possession of an undivided one-fourth interest in the Barber property, and was entitled to the possession thereof; "that on or about the day and year last aforesaid G. M. Kuhn unlawfully entered upon said property and evicted plaintiff therefrom, and unlawfully withholds from him the possession thereof, to his damage in the sum of $5,000"; fifth, that plaintiff was adjudged a bankrupt on the 20th day of January, 1915; and that all his property, including his interest in the Goose creek property, became a part of his bankrupt estate, and it was administered by the trustee in bankruptcy. His petition further alleged as follows:

"(6) That on or about the ——— day of July, 1916, the said G. M. Kuhn desired to purchase all the interest of the above-named parties in and to all the above-described property jointly with plaintiff, Carey Shaw; that to this end the

said G. M. Kuhn employed said Carey Shaw to conduct the necessary negotiations and trades to put this into effect and to acquire all said properties in the name of said G. M. Kuhn, but it was not agreed upon at that time as between G. M. Kuhn and Carey Shaw as to what interest Carey Shaw should have in and to said properties or the amount said Carey Shaw should receive for^ services so to be rendered at the special instance and request of said G. M. Kuhn; that in pursuance of said employment and special request on the part of said G. M. Kuhn said Carey Shaw did thereafter procure and purchase all of the above-described properties and cause proper deeds and transfers of conveyances of the above-described properties and interests therein above stated to be made to said G. M. Kuhn, with the exception of the one-fourth interest above described owned by the bankrupt estate of Carey Shaw which was purchased from the trustee by G. M. Kuhn direct; that all services looking to the acquirement of all other interests except· said one-fourth interest were performed by Carey Shaw for said G. M. Kuhn, at his special instance and request; that the cash necessary to pay for said interests was furnished by the said G. M. Kuhn amounting to the following: For the Guyton property there was paid to the trustee in bankruptcy of the estate of Carey Shaw for said one-fourth interest the sum of $220.25, and there was paid to William Giles for his one-fourth interest the sum of $220.25, and there was paid to Teolin Pillot for his one-fourth interest the sum of $220.25, and that there was paid for said ten acres at Barber's Hill in Chambers county, Tex., the sum of $50 in cash; that by these transactions and negotiations and trades, all of which were conducted by the said Carey Shaw at the special instance and request of G. M. Kuhn, with the exception of the purchase of the bankruptcy one-fourth interest above mentioned, the said G. M. Kuhn took title to all the above-described interests and tracts of land in his name.

"(7) That thereafter, at the special instance and request of G. M. Kuhn, the said Carey Shaw opened negotiations for the sale of what is known as the Guyton property hereinbefore described, situated in the W. Scott league in Harris county, Tex., to the Gulf Production Company, a corporation of the city of Houston, Tex., of which Mr. G. H. Davidson, Pittsburgh, Pa., is president, Mr. Underwood Nazro, of Houston, Tex., is vice president, and that said Carey Shaw, at the special instance and request of G. M. Kuhn, sold the above-described interests in said property to said Gulf Production Company for the sum of $2,000 cash, reserving a one-twentieth royalty; that before said deal was finally closed and the $2,000 cash was actually paid for same by said Gulf Production Company, and the papers had been exchanged agreeing to the one-twentieth royalty to said G. M. Kuhn, not having theretofore paid Carey Shaw for his services or agreed with him upon his specific interest upon all above-described properties, all of which had been acquired as above stated by Carey Shaw, although taken in the name of G. M. Kuhn, the said G. M. Kuhn, recognizing Carey Shaw's interest in same and that it was through his services that same had been acquired, in-

quired of Carey Shaw what his interest in said property would be and what he, said Carey Shaw, was due for his services so rendered in acquiring same, and that Carey Shaw then and there stated to said G. M. Kuhn, on or before the 25th day of ·August, 1916, that his, Carey Shaw's, interest in and to said above-described properties, cash and royalties, was an undivided one-fourth interest in and to same; that the said G. M. Kuhn did not then and there dispute the interest of said Carey Shaw or in any manner raise any question as to his, Carey Shaw's, right, title, claim, and interest in and to one-fourth of said properties, but then and⁺ there assented to same by stating that he, G. M. Kuhn, would make it all right; that, relying upon this agreement and statement on his part, the said Carey · Shaw thereafter continued to perform the services ˙so requested of him, and the deal was actually closed, and the $2,000 cash was paid by the Gulf Production Company to G. M. Kuhn, and the contract entered into for the payment by the Gulf Production Company of the one-twentieth royalty on all oil, gas, and other minerals found in and under said above-described properties known as the Guyton property.

"(8) That thereafter the said G. M. Kuhn sold the said one-twentieth royalty in and to said property to said Gulf Production Company for the sum of $50,000, and deposited said money in the Union National Bank of Houston, Tex., where said fund, or a greater part of same, is now on deposit either in the name of G. M. Kuhn or in the name of some one holding said sum for him.

"(9) That said ten acres at Barber's Hill, Chambers county, Tex., is still held by said G. M. Kuhn in his name and yet unsold, which is of the value of $2,000 which sum has been offered said G. M. Kuhn for same, and which sum he has declined.       ·

"(10) That the services so rendered, as hereinbefore pleaded, by Carey Shaw, at the request of defendant G. M. Kuhn, were of greater value than the cash furnished by G. M. Kuhn for the purchase of said properties, and that in truth and in fact the reasonable value of said services so rendered at the time and place rendered are of greater value than an undivided one-fourth interest in and to said properties, but that said Carey Shaw agreed to accept for his said services an undivided one-fourth interest in and to said properties, cash and the royalty and the proceeds thereof, and that said one-fourth interest is of the reasonable value of that sum and more, and that said G. M. Kuhn thereby became obligated to pay the reasonable value of said services; that the said Carey Shaw has never been paid anything for his services, with the exception of $200 in cash which has been paid him by said G. M. Kuhn, and which should be credited on the above amount due him, and, although due demand has been made upon said defendant for the payment of said sum to this plaintiff and for the delivery to him of his said cash and property, that defendant has wholly failed and ˙ refused to do so, to plaintiff's damage in the sum of $20,000.

"Wherefore, premises considered, plaintiff respectfully prays for citation to each of said defendants in terms of law, that upon hearing

hereof he be given his judgment for title and possession to his undivided one-fourth interest in the above-described ten-acre tract of land, and that the court decree that plaintiff has an equitable lien against said entire tract for his one-fourth interest in the cash and royalty due him as hereinbefore pleaded; that he be given judgment for one-fourth of the $2,000 cash received from the Gulf Production Company, amounting to $500, together with legal interest at the rate of 6 per cent. per annum from the date of payment, that he be given judgment for one-fourth of the said $50,000 received for one-twentieth royalty against both the defendant G. M. Kuhn and the Union National Bank of Houston, where said fund is now on deposit, and that said fund so on deposit to the extent of $12,500, together with legal interest on same from date of deposit at the rate of 6 per cent. per annum, be decreed to plaintiff, Carey Shaw, less a credit of $200 heretofore paid him, and plaintiff prays for all costs of suit and general relief."

The case was tried on plaintiff's first amended original petition, in which he pleaded an express contract between himself and Shaw, whereby Shaw agreed to give him a one-fourth interest in the property as described in his original petition, for his services in connection therewith, and in the alternative declared on an implied contract, seeking to recover the reasonable value of his services. Defendant Kuhn answered by plea of general demurrer, general denial, and statute of limitation of two years. The bank defendant was dismissed from the case by plaintiff before judgment was entered. On the verdict of the jury, judgment was rendered for plaintiff.

[1] On the trial plaintiff abandoned any claim to the Barber property in Chambers county and to the proceeds of the sale of one-twentieth royalty interest sold by defendant to the Gulf Production Company. The jury found against him on his plea on an express contract, but found for him on the implied contract, and fixed his damages at $1,200. The jury also found that the reasonable value of the services rendered by plaintiff to the defendant was 10 per cent. of the value of the property involved. Defendant in the sale of his title to the Goose creek property, received $200 cash, and reserved a one-twentieth royalty interest in the oil production. The testimony was sufficient to sustain a finding that this one-twentieth royalty interest was of the reasonable market value of $10,000 at the time it was so reserved. In assessing plaintiff's damages, the court instructed the jury to take into consideration the reasonable market value of this royalty interest. Appellant complains of this charge, but this assignment is without merit. If Kuhn had owned a good title to the Goose creek property, and if Shaw had sold only a part interest therein for Kuhn to the Gulf Production Company, it would follow that his compensation should be based on the pro-

ceeds of this sale. But this was not the case. When this Goose creek property was owned by Kuhn, Giles, Pillot, and the trustee in bankruptcy for Shaw, the Gulf Production Company acquired a title to this property hostile to the title held by Kuhn and his associates. Suit had been pending between the parties for a long time. Giles, Pillot, and the trustee had grown tired of the litigation, and were unwilling to prosecute it further. Kuhn and Shaw had faith in the final result of the suit. So, at the request of Kuhn, Shaw arranged with Giles and Pillot for them to sell their interest to Kuhn on condition that he would prosecute the suit to judgment, and, if he won, pay them about $225 each. At the request of Kuhn, Shaw adjusted the litigation between Kuhn and the Gulf Production Company, and in this settlement Kuhn received $2,000 cash and a one-twentieth royalty interest in the oil production. Shaw was as instrumental in reserving this interest to Kuhn as he was in securing the $2,000. Both items were the result of the settlement affected by Shaw, and, if his compensation is to be based on a quantum meruit (and the jury so found), then the commission should be calculated on the market value of the royalty, together with the cash received.

[2] When Shaw was adjudged a bankrupt, Kuhn was forced to pay a note for him. Shaw was released from this debt by virtue of a discharge in bankruptcy. On the trial he testified that he was willing to pay Kuhn this item, and also another item from which he had been discharged, provided he recovered the one-fourth interest claimed by him. Though no pleading raised this issue, appellant assigns error because the trial court refused to allow him a credit for these items in entering the judgment. No error is shown under this assignment, as the condition did not arise on which Shaw expressed a willingness to pay these items. The court properly refused to charge them against plaintiff.

[3] Appellant's construction of plaintiff's original petition is that plaintiff was relying for recovery on an express contract between him and Kuhn, whereby Kuhn was to pay him 25 per cent. of the value of the property as described in the petition for the services rendered by plaintiff. If he is correct in this construction of the petition, then it would follow that a suit based upon an implied contract and a quantum meruit was barred by the statute of two years' limitation, because the pleading setting up the implied contract was not filed until more than two years after the accrual of such cause of action. Henderson v. Davis, 191 S. W. 358; Scott v. Willis, 194 S. W. 220; Jones v. Holson, 141 S. W. 121; Morrison v. Bartlett, 131 S. W. 1146; Thames v. Clesi, 208 S. W. 195.

[4] If the original petition is an action for debt owing by Kuhn to Shaw, a careful analysis of the petition will show that it arises out of an implied contract. Some allegations

In the petition would seem to lead to the conclusion that plaintiff was basing his cause of action on an express contract, but he nowhere pleads facts showing a promise from Shaw to him to pay any definite sum for his services. Plaintiff fully alleges the facts on which he bases his claim, and, while some portions of his petition may allege that by reason of such facts Kuhn became indebted to him on an express contract, yet it clearly appears that such allegations are only conclusions on the part of the pleader, based on the fact that Kuhn had asked him what his charges would be. The facts as thus stated, as contradistinguished from the conclusions drawn by the pleader, do not constitute an express contract. We think this conclusion is made clear by the allegation of liability in paragraph 10 of the petition, wherein plaintiff says "that said G. M. Kuhn thereby became obligated to pay the reasonable value of said services," etc. The construction of this petition is not free from doubt, but, if plaintiff was seeking to recover from Kuhn any sum due him, it seems to us the most reasonable construction of the petition would make it a suit on an implied contract and quantum meruit.

[5] Inasmuch as appellant has limited his discussion of plaintiff's original petition to the two theories above discussed by us, and has no assignment suggesting any other construction, it could not avail him for us to suggest that possibly the plaintiff in his original petition was seeking a recovery on neither an express contract, nor an implied contract for the value of his services, but that his original cause of action was in part in the nature of a trespass to try title, and in part for conversion. It would seem from many of the allegations in the petition, considered in connection with the prayer, that Shaw was claiming an ownership to the extent of a one-fourth undivided interest in the property described in his petition; that defendant had sold a part of this property and converted the proceeds to his own use; that he had sold the royalty interest and deposited the proceeds in the defendant bank, and as to this item the prayer is for a recovery of the one-fourth interest in the proceeds of the sale, for which he seeks to hold the bank liable, not on the ground that the defendant owed him this sum, but on the ground that the bank was holding funds in the name of the defendant which belonged to plaintiff. Had plaintiff sought a recovery for a sum due him by defendant, he could have held the bank only by garnishment, and not as a defendant in the original cause. Again, he specifically pleads an ownership in a one-fourth interest in the Barber property in Chambers county, alleging that on or about the 1st day of January, 1918, he was in possession of the one-fourth undivided interest, and was entitled to the possession thereof,

and "that on or about the day and year last aforesaid G. M. Kuhn unlawfully entered upon said property and evicted plaintiff therefrom and unlawfully withholds his possession thereof, to his damage in the sum of $5,000." But, if this is the correct analysis of plaintiff's original petition, appellant does not suggest the same, either by argument or by assignment, and no error is shown in connection therewith.

Finding no errors in this record, the judgment of the trial court is in all things affirmed.