Hemphill, Ch. J.
Various grounds have been assigned for error; hut, as preliminary to a discussion of the points presented by the appellant, I will comment briefly on a position assumed by the appellee, viz : That, admitting the errors as charged in the rulings of the court, yet the verdict should stand, there being no evidence that the negro died of any infirmity existing at the time of the sale. Upon this point the proof is not satisfactory. There was evidence that some years previous to the sale the boy had been affected with the dropsy, of which he had been cured, although there was subsequently some threatening symptoms. But there was no proof that the disease of which he died was either dropsy or superinduced by that disease. No physician was called, and none of the witnesses could characterize the disease. Lewis, a physician and a witness, was of opinion, from the symptoms described in the deposition of another-witness, that the disease was winter fever or pneumonia.
Wright, the overseer of Fort, testified that the negro was sound at the time of the sale; but, on the other hand, there was evidence that he was in bad health from that time. One witness stated that he was reputed sick from the removal of the plaintiff to Collin county; but that at the time of removal from Bowie through the prairies to Collin county the weather was extremely inclement, cold, and wot, and there was a norther blowing. But upon this point i»is not necessary to dwell. That the death resulted from some disease anterior to the sale should have been more clearly established. But probably this view was not taken in the court below, and as it is not essential to the decision wo. will dispense with its further discussion.
We are of opinion that there is no ground for the first assignment, and that, in excluding the testimony of Talbott and Jones, there was no error.
It is assigned, secondly, that the judge erred in the charge to the jury.
The first and fifth propositions in tlie charge embody the principle *116 that a sound price does not imply a warranty pi soundness of property. That the reverse of this is true, viz, that a sound price implies a sound commodity, is a familiar principle of Roman law and of the laws of Spain, in force in Texas previous to 1840. But under the common-law system then introduced the authority of this principle lias not been recognized. The ruling maxim of this system on the subject of sales differs from that which obtains at civil law. In the one the rule is caveat emplor ; iu the other, caveat venditor.
But, thongli the maxim of caveat emptor is still recognized as having some force at common law, yet it is hedged in with many restrictions and circumscribed with so many exceptions that its authority over the law of sale is greatly abridged, and, in fact, it is hut a “ shadow of itself.” (Story on Sales, sec. 359.)
The rule at common law now appears to he that the purchaser buys at his own risk, unless the seller give either an express warranty, or unless the law implies a warranty from the circumstances of the case or the nature of the thing sold, or unless the seller bo guilty of a fraudulent concealment or representation iii respect to a material inducement to the sale. (Story on Sales, sec. 349; 2 Kent, 478.)
A fair price implies a warranty of title, hut not, unless under special circumstances, a warranty of soundness. A purchaser must, at his own risk, attend to the quality of the article which lie buys, supposed to he within the reach of his observation and. judgment. A rule which has a more direct application to the facts of this case is, that where there is no express warranty by the seller, or fraud on his part, the buyer, who examines the article for himself, must abide by all losses arising from latent defects, equally unknown to both parties. Tliis rule applies to cases, says Chancellor Kent, where the article is equally open to the inspection of both parties, and the purchaser relies on his own information and judgment, without requiring any warranty of the quality, and it does not apply to cases where the purchaser lias ordered goods of a certain quality and relies on the judgment of the seller. (2 Kent, 479.) It £nay he laid down as a rule, condensed from the authorities, that if the defect in the article be equally open to the observation of both parties — if the meaus of information be equally accessible to both; if neither does nor says anything tending to impose upon the other, and if the one in possession of material facts, knowing the other to he ignorant of them, he under no special obligation, by confidence reposed or otherwise, to communicate them truly and fairly — then the disclosure of this superior knowledge, as to facts affecting the value of the commodity, is not requisite to the validity of the contract. (2 Kent Com., 482, 484, 490; Story on Sales, capt. xii.)
In recent English cases another encroachment has been made upon the domain of the maxim of caveat eniplor. It is laid down as a principle, (hat if a man sells an article he thereby warrants it to he merchantable — that it is fit for some purpose; and if he sell it for a particular purpose, that it is fit for that purpose. (Story on Sales, sec. 37 L; Kent, 479 ; Gray v. Cox, 4 Barn. & Cres.; 4 Campb. R., 144; 2 Mann. & Gr. R., 279, 290, 292.)
To apply such of the above rules as are pertinent, let us examine the facts of the ease.
It does not appear that any representations of any character were made by the defendant in relation to the soundness of the slave. The purchaser was perfectly apprised of his condition. Bor four years previous to the purchase the hoy had had a wife at the plaintiff’s house, whom he had visited every Saturday night, remaining until Monday morning, frequently visiting her on Wednesday night. The plaintiff also made inquiries of the overseer, Wright, in relation to the health of the boy previous to the sale; and a witness (Runnels) testified that in the year 1843, on proposing to sell the plaintiff a slave, he replied that he intended to buy Dr. Fort’s Wash; and on witness saying tlpt AVash was a sickly, dropsical negro, plaintiff stated that he knew *117 as much about the health pi the negro as Dr. Fort or anybody else, and that he would rather have Wash than any two negroes in the county.
The facts show the confident reliance, of. the plaintiff on his own judgment; that his means of information wore ample; that he did not seek the, opinion of the defendant. And such was his confidence in himself, that he would most probably have disregarded Lhe opinion of the defendant had it been voluntarily expressed.
If the plaintiff was deceived as to the condition of the boy, his mistake did not originate, from any misrepresentation or other act of the defendant. And if the latter had superior knowledge of the infirmities of the slave, he was not, under the circumstances, bound to make a disclosure. ISTo confidence was reposed in him. Ilis opinion was not asked, and if given, would most likely have liad no influence. The plaintiff appears to have been determined on the purchase, and the inducements to it were as potent as they were highly honorable to his feelings and sympathies as man aud as a master. The price of the negro was high, but to this lie was willing to submit, rather than inflict upon a valued female, servant the miseries of separation from her husband. Under such circumstances, and with motives so highly commendable, it is unfortunate that the benevolence of the plaintiff has resulted in a loss so severe, but it is not justly attributable to any act or expression of defendant, or any concealment by him which is in law regarded as fraudulent.
There was no express warranty of soundness to which the plaintiff can resort for relief; nor, under such circumstances, is there in law any implied warranty. There was no error, then, ill the charge, either abstractly considered qr with reference tft the facts of the case, that a sound price does not imply a sound commodity.
It will be unnecessary to discuss the points raised as to the promised bill of sale, except to assent to the proposition that it was not essential to vest property in the plaintiff, and that, on the delivery of the slave, the title was completo; or rather, under the facts of this case, the property, on payment of the consideration, attached to the purchaser.
The fourth proposition is that, as there was no fraud charged in the petition, no evidence of fraud committed by Fort could be taken into consideration by the jury. As a legal proposition tills is unquestionably sound. Flo allegations in the pleadings apprised the defendant that he must prepare to meet- any charges of fraud. But the law of this case has been discussed as if the whole of the facts in evidence had been considered by the jury, and if there was error in the charges, it would'not, on the whole of the facts, disturb the verdict. The defendant may not have believed the boy to be sound. That such was his opinion is manifest from conversations subsequent to the sale, aud his exaction of an exorbitant price is,.under such circumstances, in point of morals uneonsci-eutious. But it is equally clear that he used no artifice nor did any act to impress an opposite belief in the plaintiff, and that, in contemplation of law, he was not guilty of any fraud. The plaintiff throughout the transaction confided altogether in his own judgment, aud if he was deceived it was his misfortune, and not the fault of the defendant. On this substantial ground the verdict is a true finding upon the law and the facts of the case.
The refusal of the judge to give certain instructions asked by plaintiff presents no substantial points uoCembraeed in the questions already considered.
Judgment affirmed.
Note 30. — Murphy v. Crain, 12 T., 297; Scranton v. Tilley, 16 T., 183. To constitute a breach of warranty of soundness, the disease must have existed in a formed state at the time of the sale, and have becomo of a permanent nature calculated to materially affect the value. A disease of any kind if easily removed, but by neglect or maltreatment allowed to prove fatal, is not unsoundness within the meaning of the warranty. Wade v. DeWitt, 20 T., 398.
Note 40. — Murphy v. Crain, 12 T., 297; Scranton v. Tilley, 16 T., 183.
Note 41. — Good v. Coombs, 28 T., 49.