MAUD & CARROW v. CHARLES COPPINGER.

Decided January 27, 1900.

1.  Transcript on Appeal—Costs, Where Too Voluminous.

A failure to comply with the rules in the preparation of the transcript whereby it is several times more voluminous than it should be, is condemned and held in this instance to subject appellant to the costs thereof, and such failure in the future declared a cause for striking the transcript from the record.

2.  Contract for Sale of Cattle—Acceptance—Delivery.

A contract for the sale of certain grades of cattle by defendant to plaintiffs provided that they were to be passed upon by plaintiffs at the ranch, and were then to be delivered by defendant f. o. b. at a given railroad point for shipment, with right reserved to plaintiffs to reject all unmerchantable or diseased cattle. Plaintiffs passed on the cattle at the ranch, and the defendant drove them to the shipping point and tendered them to plaintiff, when it was found that they were infested with ticks, which rendered them nontransportable to the point contemplated by plaintiffs in the cars they had provided. The cattle were not diseased by reason of being infested with ticks, though it rendered them nontransportable in certain directions. There was no warranty in the contract against ticks, nor did it provide against characteristics inhibited by a particular market or State, and no fraud or concealment was alleged. Held, that the title to the cattle passed to plaintiffs when they were passed upon and accepted.

APPEAL from Tarrant. Tried below before Hon. IRBY DUNKLIN.

*Coke & Coke* and *Carter & Bell,* for appellants.

*Matlock, Cowan & Burney* and *Capps & Canty,* for appellee.

CONNER, CHIEF JUSTICE.—Appellee has urged a motion to strike out the statement of facts found in the record, and after careful consideration we have concluded that in the interest of the public service it is our duty to do so. The statement in question covers some 149 pages of the record, and appears to consist very largely of a stenographic report of the trial, abounding in instances of questions propounded to the witnesses, in answers thereto given on examination in chief, on cross-examination, re-examination, recross-examination, etc., and in objections urged to the introduction and rejection of evidence, remarks made by court and counsel pertaining thereto, and in other immaterial and irrelevant matter. In illustration of this it may be stated that an effort was made by appellants to correct the objections thus indicated by preparing and presenting to the court for approval a condensed and corrected statement of facts. This condensed statement covers but forty pages of the transcript, 100 pages less than were necessary to set out the statement approved and filed. Appellee's testimony, as set forth in this condensed statement, is contained in ten pages of the transcript; the same as set forth in the statement to which the motion relates, forty-four pages, and we have been irresistibly driven to the conclusion that the approved statement of facts is in conspicuous violation of the rules prescribing the manner in which such statements shall be prepared. See Rules 72 to 78, inclusive, 84 Texas, 718.

This seems to be practically conceded in behalf of appellants, but it is insisted sufficient excuse therefor has been shown. The verdict and judgment were rendered upon the 6th day of April, 1899. The term of court during which the trial occurred adjourned May 6, 1899, and by order ten days after adjournment were allowed within which a statement of facts might be filed. It was shown that the stenographer who took the notes of a large part of the proceedings was sick with rheumatism, and unable to furnish counsel for appellant with a typewritten transcript of his notes until the 5th day of May, when such transcribed notes were delivered to them and presented to counsel for appellee, who, on the next day, at about 5 p. m., returned such notes, refusing to agree thereto as a statement of facts, suggesting that it be filed after adjournment. Counsel for appellants objected to this course, because the statement contained some of the appellants' bills of exceptions, and thereupon presented such statement to the court for approval, and insisted on its being filed, which the court did, and ordered the same filed. Afterwards counsel for appellant wrote out the condensed statement of facts hereinbefore mentioned, to which appellee's counsel refused to agree, and the same was thereupon presented to the court for approval. This statement was so presented for approval about 4:45 p. m. of May 16, 1899. The court certifies that he considered this statement, with some interruptions in the performance of official business recited, until 10 o'clock of the night of May 16, 1899, and that "this being the last of the ten days allowed the parties in which to file a statement of facts, and the evidence so voluminous I haven't sufficient time to determine whether or not the foregoing statement is a full statement of all the evidence introduced upon the trial," and therefore declined to approve such condensed statement, to which exception was taken.

In so declining we are unable to say the court erred, as is assigned. If, in any event, it would be proper for the court to thus cause to be incorporated in the record two distinct statements of fact, we nevertheless are of opinion that such corrected statements should have been prepared and presented within such time as to be sufficient for the court to consider and act intelligibly thereon, and no sufficient reason is made to appear why the condensed statement was not prepared and presented earlier.

Nor have we been able to conclude that any sufficient reason has been shown for the filing and approval of the first statement herein referred to. Notwithstanding the sickness of the stenographer, it does not appear that his notes might not have been transcribed by some other competent stenographer, or that the parties in interest had so far forgotten the substantial facts proven as that it was even necessary to have such notes. That it was not necessary, if in any event a sufficient reason, to so file for the preservation of the exceptions, is indicated by the fact that of the assignments of error relating to the introduction and rejection of evidence some nine or more are supported by formal bills duly prepared and

filed during the term. No reason appears in the record why each exception deemed material might not likewise have been so prepared.

We have carefully examined the record in each of the cases decided by this court and cited by appellant in opposition to the motion, and have found them easily distinguishable in important particulars.

The reasons for requiring the observance of the rules relating to the preparation of statements of facts are well stated by Chief Justice Finley of the Fifth District in the case of Caswell v. Hopson, 43 Southwestern Reporter, 547, and in accordance with the decision in that as well as in other cases that might be cited, appellee's motion to strike out the statement of facts is sustained.

## ON THE MERITS.

The record in this cause is very voluminous, and it has, with great art and ability, been elaborately presented and briefed. Appellant has urged forty-two separate assignments of error, which, with the several propositions, statements, and arguments following them, make a book of 148 pages of closely printed matter. The assignments, however, save one disposed of in the ruling on the motion to strike out the statement of facts, all relate to charges given and refused, to the introduction and rejection of evidence, and to the ruling of the court in overruling the motion for a new trial, and are such as that, in the absence of a statement of facts, we can not say are well taken. A statement therefore of this case is perhaps unnecessary, in view of our ruling sustaining the motion of appellee to strike out the statement of facts in the record, as will more fully appear in our conclusions relating thereto this day filed. Our anxiety, however, that no positive injustice be done has been such that we have nevertheless examined the record, and are of opinion that from the allegations of appellants' petition and the facts as admitted on the hearing and as apparent from the record, appellants have no material cause of complaint.

The suit was by appellants for damages on account of an alleged breach of a contract for the sale and delivery of certain cattle, f. o. b. the cars, at a point on the Fort Worth & Denver City Railway. The trial resulted in a verdict and judgment for appellee.

The following is the contract sued upon, as set out in appellants' petition:

"This agreement, made and entered into this the 13th day of October, 1897, by C. Coppinger of Tarrant County, Texas, party of the first part, and Walter de S. Maud and Richard Carrow, parties of the second part,

"Witnesseth: That the said party of the first part, for and in consideration of twenty-one dollars per head, has this day sold to the parties of the second part all his coming two-year-old steers branded E ɷ E ꓱ ꟽ ꓱ and ⌐E⌐ on left side, now running and pasturing in the

pastures in Kent and Scurry and adjoining counties, being between 1800 and 2000 head. On the above coming two-year-old steers, said party of the first part agrees to give to the parties of the second part the privilege of a 5 per cent cut. And further, the said party of the first part, for and in consideration of $16.50 per head, has this day sold to the parties of the second part all his coming one-year-old steers, branded E ∞ E ] ᙎ ] ⧼E⧽ on left side, now running in his pastures in Kent and Scurry, Mitchell, and adjoining counties, and being between 1500 head and 1600 head; and the parties of the second part agree to pay to the party of the first part $—— per head for the 5 per cent cut of said coming two-year-old steers and $—— for the 10 per cent cut on said coming one-year-old steers. On the above coming one-year-old steers said party of the first part agrees to give the said parties of the second part the privilege of a 10 per cent cut. And said coming yearling steers are not to be weaned or separated from the stock cattle until February, 1898. And said parties of the second part shall, besides, reject all swaybacks, blinds, stags, big jaws, deformed, unmerchantable, or diseased steers. Said party of the first part agrees to deliver the said steers to the parties of the second part f. o. b., either at Clarendon, Amarillo, Texas, or Panhandle, Texas, when notified by the parties of the second part, either in May or June, 1898, upon reasonable notice being given to the said first party.

"The parties of the second part agree to receive the said steers at the place mentioned and on the terms and conditions herein set forth, and further agree to make final and balance of payment to the party of the first part on said steers at the time of delivery. The party of the first part hereby acknowledges receipt from the parties of the second part of $10,000 in payment in advance on said steers.

"The above steers are all native steers, raised in Scurry, Mitchell, and adjoining counties, and are to be of equal average grade, quality and condition with the straight E ∞ E cattle.

"In the event of the above described cattle not being in fit condition to go on the trail or to be shipped in the cars, owing to drought or unusual severe winter, then the party of the first part agrees to postpone the delivery of the cattle until October, 1898, the parties of the second part paying pasturage at the rate of 75 cents per head, and also paying a further sum of $40,000 on account, said latter payment of $40,000 to be made on or before May 15, 1898.

"Said cattle are to be passed upon by said second parties or their agents before leaving the ranch in Scurry or Kent counties, Texas.

"Witness our hands this the 13th day of October, 1897, signed in duplicate.

"CHAS. COPPINGER,
"MAUD & CARROW,
　"By Walter de S. Maud."

Appellants alleged that pursuant to the terms of said contract, at appellee's ranch in Kent County, Texas, on the — day of June, 1898, they passed upon about 1600 head of the two-year-old steers and 1400 head of the one-year-old steers, as being apparently in condition suitable for delivery under the terms of said contract; that on June 14, 1898, they had provided suitable cars for the reception of said cattle at the point agreed upon, at which point appellee then and there proposed to deliver said cattle, but that it was then ascertained that said cattle were infected with ticks, which it was alleged rendered them nonmerchantable or transportable over said railroad for points north, where it was contemplated said cattle should be shipped and kept, and appellee thereupon abandoned said contract and wholly failed and refused to deliver the cattle in question, to appellants' damage as alleged. It was also alleged that at the said time of passing upon said cattle appellants did not know and could not have known by the use of reasonable diligence that the same had any ticks upon them, or were likely or liable to communicate Texas fever to other cattle. Appellants prayed that in the event they were not entitled to recover their damages as alleged, for the breach of said contract, that they then be permitted to recover the $10,000 paid appellee thereon.

There appears to be no dispute as to the fact that the cattle in question were examined and "passed upon" by appellants or their agents, at appellee's ranch, and that they were thereupon driven by appellee to the point on the railroad mutually agreed upon, and we think it apparent that he then and there in effect tendered said cattle for shipment. It is not contended that appellee had other cattle of the classes designated in the contract, and while we might, as an original proposition, arrive at a different conclusion, we have not been able to clearly distinguish this case, upon such a state of facts, from the case of Irvine v. Edwards, 92 Texas, 258, in which our Supreme Court held, under a contract in many particulars similar to the one sued on, that title passed. If in fact the title passed to appellants upon the "passing upon" and substantial acceptance stated, then a breach of the provision relating to delivery f. o. b. might render appellee liable to the expense necessary to put them aboard the cars, but not as prayed for in appellants' petition.

We need not inquire into the pathology of Texas fever, or as to the effect upon cattle of the presence of the "tick." It is not contended that the cattle in question in fact had the Texas fever, or any other ailment, save that it is insisted they were infested with ticks. If appellants accepted cattle with ticks knowingly, they could not thereafter complain. If in fact ticks were upon the cattle, no reason is shown why they were not as apparent to the observation of appellants as to appellee. If so, the doctrine of caveat emptor would seemingly apply, there being no warranty against ticks in the contract, and no fraud or concealment alleged. Needham v. Dial, 4 Texas Civ. App., 141; McKinney v. Fort, 10 Texas, 220; Lumber Co. v. Warner, 6 S. W. Rep., 210.

Indeed, while the issue was submitted by the court, the evidence in-

sisted on as tending to show that the cattle in question ever had ticks thereon is very inconclusive. It is conceded that the duty of furnishing cars upon which the cattle could be loaded rested upon appellants. The cars furnished were such as that the railway company would not permit cattle infested with fever ticks to be loaded thereon. It is not pretended that the cattle might not have been shipped on cars destined for a different direction, had they been furnished. The contract did not provide against characteristics inhibited by a particular market or State. A strong motive in appellants to avoid the contract is indicated in the undisputed fact that the cattle in question were worth several thousand dollars less from decline in market value than appellants had agreed to pay. It is reasonable to infer from the same fact that appellee was anxious to deliver and receive the remainder of the purchase money. If we assume, however, that neither party was willfully in fault, and that the circumstances were such that all parties at the time reasonably acted on the belief that performance of the contract as to f. o. b. car delivery was impossible, nevertheless it does not appear either in allegation or evidence as asserted, that appellants' equities are such as that justice requires the judgment below to be set aside, to the end that they may recover all or some part of the money by them paid appellee.

We conclude that no material injustice has been done appellants by the decision below, and no error being apparent from the record, that the judgment should be affirmed.

ON MOTION FOR REHEARING.

In view of the able and earnest argument submitted in behalf of appellants on the motion for rehearing, and inasmuch as the failure of this court heretofore to strike out statements of facts for violations of the rules may have tended to lull the mind of the profession into a feeling of security, and in view of the consequences to the parties in interest, we have concluded to modify our former order striking out the statement of facts in this case by overruling the motion therefor and taxing the cost of the motion and of the copying of said statement into the transcript against appellants, and it is so ordered. We trust, however, that our former action on the motion will accentuate the view of this court that a faithful compliance with the rules prescribed for the preparation of statements of facts is necessary in the public interest to facilitate the dispatch of business and to render less liable errors in the consideration of records submitted to us.

Nevertheless, a re-examination of the record, in the light of the statement of facts, has tended to strengthen the view expressed in the opinion on the original hearing. To what we there said we add that the evidence established the execution of the contract set out in said opinion, and the payment of $10,000 thereon, as alleged. There was no proof that appellee had other cattle of the classification and description therein designated as "sold." The evidence is uncontradicted that appellants

and their agents, at the time specified, went to the ranch of appellee and then and there "passed upon" the cattle to be delivered. It is also the fact that the question of "ticks" vel non was raised and discussed at the time the cattle were passed upon by appellants. No ticks were then found, or if so, the objection was not urged, and appellants accepted the cattle as fulfilling the terms of the contract, and the cattle so accepted were segregated from all others and driven to the shipping point agreed upon and there, in effect, as must be held, tendered by appellee for shipment. If, under such circumstances, the title to the cattle did not in fact pass to appellants, we think it was nevertheless too late to then entertain appellants' proposition that the cattle were not "merchantable" by reason of the fact, if true, that they were infested with the "tick." It is also conceded that it was appellants' duty to furnish cars upon which the delivery could be made. It is not insisted that the cattle in question might not have been received had they been intended for immediate slaughter or had cars been furnished for points of destination in a different direction. No such cars were furnished. Appellee's duty to deliver f. o. b. the cars must have been understood as dependent upon such performance by appellants. The contract failed to provide for the view insisted upon by appellants. If it be conceded that ticks were found upon the cattle, as declared by Fleming, then it might still be questionable whether such fact rendered the cattle "unmerchantable," in the sense of that term as used in the contract. It is also undisputed that appellee drove to Estelline, the point of delivery, 1442 one-year-old and 1632 two-year-old steers, upon which, as there is evidence tending to show, the market price had decreased as much as $2 per head below the contract price, appellee's expense or loss in gathering and driving to Estelline, and in returning, if returned, or of a resale, if resold, not appearing, so as to enable us to determine what part, if any, of the $10,000 paid appellee the rules of equity might require should be returned to appellants. In view of all which, if we are correct in interpreting the verdict and judgment as establishing these conclusions, it follows, as we think, that the errors, if any, complained of are immaterial, and that the motion for rehearing should be overruled, except as hereinbefore otherwise indicated.

*Overruled.*

Writ of error refused.