## COULTER v. GULF, C. & S. F. Ry. CO.
### (No. 10059.)

(Court of Civil Appeals of Texas. Fort Worth. Nov. 25, 1922. Rehearing Denied Feb. 17, 1923.)

**1. Appeal and error ⚖196—That court entertained supplemental petition setting out special damages, instead of requiring amended petition, held not fundamental error.**

Where a supplemental petition amplified the original petition by alleging special damages, it was not fundamental error for the court to entertain the pleading of such new matter in that form, although such matters might more properly have been embraced in an amended petition setting out the entire cause of action.

**2. Limitation of actions ⚖127(3) — Amendment as to special damage in shipper's petition held not to set up new cause of action.**

Where a petition by a shipper against the railroad company alleged a cause of action for damages to the goods in shipment, for delay, and for deviation from the agreed route, new matter set up in a supplemental petition as basis for special damages resulting from the shipper's failure to sell the goods under a contract exhibited to the carrier at the time of the shipment *held* not to set up a new cause of action so as to make a plea of limitations applicable.

**3. Carriers ⚖136—Issue of actual damages sustained under contract of shipment held for jury.**

In a shipper's action against a carrier for special damages due to failure to sell the goods shipped under a sales contract made prior to the shipment, because of delay in the carriage and of damage to the goods shipped, it was error under the evidence to take from the jury the issue of actual damages sustained.

**4. Carriers ⚖135 — Measure of damages against carrier for delivery in damaged condition of goods sold under contract made prior to shipment stated.**

Where goods subject to a contract of sale are damaged during shipment, the measure of damages in an action by the shipper against the carrier is the difference between the value of the goods in their damaged condition when received at destination and the amount the shipper would have received had the purchaser consummated his contract of purchase.

**5. Evidence ⚖568(4)—Judgment for shipper for damages to goods in shipment sustained.**

In a shipper's action against a carrier for damages to goods in shipment, testimony by plaintiff that the goods when they arrived had no market value by reason of their damaged condition, objected on the ground that the witness had not shown himself qualified, was nevertheless sufficient to support a judgment for plaintiff.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by W. H. Coulter against the Gulf, Colorado & Santa Fé Railway Company. Judgment for defendant on a peremptory instruction, and plaintiff appeals. Reversed and remanded.

Sam J. Hunter and L. C. Penry, both of Fort Worth, for appellant.

Lee, Lomax & Smith, of Fort Worth, for appellee.

DUNKLIN, J. H. W. Coulter shipped two carloads of billiard and pool tables with certain equipments from Forth Worth, Tex., to the city of Philadelphia, Pa., and he instituted this suit to recover damages for injuries to the goods during that shipment.

The case was tried before a jury, and judgment was rendered for the defendant upon a verdict which was instructed by the trial judge, and the plaintiff has appealed.

The record does not show upon what theory the trial court gave the peremptory instruction to return a verdict for the defendant. The appellee, however, has sought to sustain that instruction for two reasons: First, that plaintiff's cause of action, as asserted in his amended pleadings upon which he went to trial, was barred by the statute of limitation of two years; and, second, that he failed to prove, prima facie, a proper measure of damages by competent testimony.

---

⚖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

This is the second appeal in this case, the decision of the former appeal being by the Texarkana Court of Civil Appeals and reported in 139 S. W. 16. That decision, rendered June 8, 1911, reversed and remanded the judgment rendered for the plaintiff on a former trial for the sum of $6,760.

It is stated by counsel that the trial from which the present appeal was taken was upon substantially the same evidence offered by plaintiff on the former trial, said evidence having been read from the record of the former trial and depositions on file. And after plaintiff had introduced his proof to sustain his right of recovery, the defendant filed a motion for an instructed verdict without introducing any evidence, and upon that motion the peremptory instruction to the jury was given.

The pleadings upon which plaintiff based his right of recovery on the first trial appear to be the same as those relied on in the last trial. After the former judgment was reversed, the defendant filed an amended pleading, in which occurs, for the first time, the plea of limitation of two years; otherwise, its defensive pleadings were substantially the same.

The goods were delivered to the defendant's agent in Fort Worth on May 2, 1907, to be shipped to Philadelphia, and they arrived at that destination June 26, 1907. The suit was instituted March 20, 1908; but the amended pleading, by virtue of which defendant claimed a new cause of action was alleged, and which was barred by the statute of limitation of two years, was filed December 8, 1909, more than two years after the goods reached their destination. The substance of the original petition and amended petition is set out in the opinion of the Court of Civil Appeals referred to.

The original petition contained allegations, in substance, that plaintiff delivered the goods to the defendant's agent at Fort Worth, Tex., for shipment to Philadelphia, Pa., with the instruction from him to said agent that the goods be routed and waybilled via St. Louis, Mo., over the Vandalia line of railway, to Indianapolis, then on to Philadelphia, Pa.; that defendant's agent then and there agreed to so ship and route the goods; that by the defendant's acceptance of the goods for shipment under such instructions for routing, the defendant agreed and bound itself to so ship and route the goods and to ship them with reasonable dispatch; that said agent agreed with plaintiff that the freight to be paid by him for such shipment from Fort Worth to Philadelphia would be $230, which plaintiff offered to prepay, but which offer was refused by defendant's agent in Fort Worth, who stated at the time that such freight charges could be paid by plaintiff at the destination of the shipment. It was further alleged in that pleading that the de-

fendant, in violation of its contract and agreement, refused to route the goods as directed, but, instead, routed them over its own line and the line of the Atcheson, Topeka & Santa Fé Railway to Chicago, said two roads being under the same ownership and control, and from Chicago over the Pennsylvania Railway and the Philadelphia & Reading Railway to Philadelphia; that the goods were en route from May 2d to the 26th day of June; that relying upon defendant's promise to route the goods as directed, plaintiff went from Fort Worth to Philadelphia to await the arrival of the goods, and after reaching that point he spent $300 for traveling and telegraphic expenses, in an effort to locate the goods.

It was further alleged that when the goods arrived in Philadelphia plaintiff was required to pay the sum of $549.69 freight charges in order to get a delivery of the goods; that when the car was opened the goods were in a badly damaged condition, being broken, mashed, wet, unglued, and so damaged that they were almost worthless; that had he known of their damaged condition he would not have received them, but the delivering carrier refused his request for permission to inspect them before receiving them and paying the freight demanded; that after he received them and found them in the damaged condition he tendered them back to the carrier, who refused to accept them; and that he was compelled to unload and store them at a cost of $24 per month storage charges, which he had been compelled to pay from the date of their receipt up to the time the suit was instituted.

Plaintiff further alleged that the goods were reasonably worth in Fort Worth and in Philadelphia the sum of $20,000, which sum he had paid therefor only a few months before they were delivered to the defendant for shipment. The said original petition concluded with the following allegation:

"That by reason of the premises and by reason of the negligence, fraud, and misrepresentations and breach of contract and breach of duty on the part of the said defendant in failing to waybill and route said goods as it agreed to do, and in failing to carry said goods to St. Louis and deliver them to the Vandalia line as it was directed, and as it agreed to do, and by reason of its negligently failing to transport and carry said goods in a reasonably careful and diligent manner, and with proper dispatch, and by diverting said goods from the route the defendant agreed to carry them, by reason of the injuries and almost utter destruction of said goods caused by the defendant and the railroad companies over which and to which it unlawfully diverted said shipment, negligently rough handling same, the plaintiff has been damaged in the sum of $20,000.00 and therefore he sues.

"Wherefore the plaintiff prays for citation herein, and upon final hearing hereon, for judgment against the defendant for his damages,

interest, and costs, and for all other and proper relief, both general and special, and he will ever pray."

On December 8, 1909, plaintiff filed two pleadings, one styled "Plaintiff's First Supplemental Petition," and the other styled "Plaintiff's Trial Amendment." In the supplemental petition, following a general denial of the allegations contained in the defendant's answer, plaintiff alleged that on April 29, 1907, and before he tendered the goods for shipment to the defendant's agent at Fort Worth, he entered into a written contract with one Grant H. Eby, by the terms of which plaintiff had contracted to sell to Eby, and Eby had contracted to buy, the goods for a consideration of $7,000; that Eby contemplated opening up a billiard hall either in Detroit, Mich., or in Indianapolis, Ind., or in Philadelphia, Pa., and his contract of purchase was conditioned upon a shipment of the goods via Indianapolis and Detroit with the privilege of stopping them at either of those places in the event such place should be determined as his place of business, otherwise that he would receive them in Philadelphia, and conditioned further that the goods should be delivered to him in as good condition as they were in on the date of the contract of purchase. It was further alleged that after procuring from Eby said contract of purchase, plaintiff made an oral contract with Graham, defendant's agent at Fort Worth, for the shipment of goods over the route designated in the original petition with the privilege of diverting them from Indianapolis to Detroit, if Eby so desired, and with the privilege of terminating the shipment either at Detroit or at Indianapolis.

It was further alleged that the defendant's agent agreed to furnish a 50-foot car for said shipment, but that subsequently, at the instance and solicitation of the agent, plaintiff was induced to agree that the shipment be made in two 30-foot cars, and that said agent agreed with plaintiff that the freight charges for said entire shipment would be the sum of $230. It was further alleged in that pleading that at the time defendant's agent so agreed to make such shipment, plaintiff exhibited to him the written contract of sale which he had made with Eby, which contract contained the stipulation above mentioned for routing with privilege of terminating the shipment at either Indianapolis or Detroit, as Eby might desire. It was further alleged that after making the contract with defendant's agent, Graham, and when he delivered the goods to the defendant at Fort Worth and defendant accepted the same, plaintiff instructed the shipping agent, Dunham, to route and ship and waybill the goods as above mentioned, and also notified the said Dunham of the contract of sale which plaintiff had made to Eby; that he was assured by said Dunham

that his instructions for routing and shipping would be complied with; that after the goods were loaded and sealed in the cars, he demanded of the defendant's agent a receipt for the goods; that the defendant's agent, upon whom the demand was made, took down a list of the goods upon a paper containing some written matter which he plaintiff did not read or understand, but which was supposed to be the receipt asked for, and handed it to the plaintiff who signed it, believing it to be merely a receipt for his goods, and never knew the contents until long after he arrived in Philadelphia when he placed the same in the hands of his attorney. And in reply to the pleading by the defendant that plaintiff had received from defendant a bill of lading for said goods limiting its liability for any loss that might be sustained, he further pleaded that if said bill of lading be a contract for the shipment of the goods and by which he is bound, then the same is invalid and void because in violation of the act of Congress known as the Hepburn Act (34 Stat. 584), regulating interstate commerce, and was without consideration.

In the trial amendment so filed by plaintiff, it was alleged that by reason of defendant's failure to route the goods as it had agreed to do, and by reason of the damages and injuries to them and by reason of their long delay in reaching Philadelphia, the said Eby refused to carry out his contract of purchase and thereby plaintiff lost the opportunity he had to sell them to him.

[1] The supplemental petition, so filed, cannot be construed as a substitute for the original petition. It amplifies the original petition to the extent of alleging the contract of sale of the goods to Eby, and notice of such contract brought home to defendant's agent at the time the goods were received by the defendant for shipment. Perhaps such matters should more properly have been embraced in an amended petition setting out the entire cause of action, but the action of the court in entertaining the pleading of such new matter in that form was not fundamentally erroneous.

[2] The first question to be considered is whether or not the new matter so pleaded set up a new cause of action, as contended by the appellee. We think not. It is well settled that legitimate special damages may be recovered for the breach of a contract, if, at the time the contract is entered into, notice is brought home to the party who afterwards breaches it of facts reasonably tending to show that such special damages may result as a consequence of such a breach. Hence, if plaintiff had made a contract of sale of the property, such as he alleged, conditioned upon the shipment being made within a reasonable time, with delivery at destination in good condition, and if notice was brought home to the defendant of such con-

tract at the time it received the goods for shipment, and if by reason of the defendant's failure to ship and deliver the goods at Philadelphia with reasonable dispatch, and its further failure to handle them with reasonable care, the goods were so delayed and damaged that the proposed purchaser refused to consummate his contract of purchase, and if such a consequence ought reasonably to have been forseen as the result of such failure on the part of the defendant, then we perceive no valid reason why defendant would not be liable for the loss sustained by the plaintiff by reason of his failure to consummate said sale. Defendant's liability for such special damages would not be upon the theory that it had expressly contracted to answer therefor, but its liability would be upon its contract to ship the goods with reasonable dispatch and to handle them with ordinary care and that its failure to perform that contract was the proximate cause of the loss; and negligence in that respect was specifically alleged in plaintiff's original petition. Moreover, while plaintiff's supplemental petition contained allegations twice repeated, to the effect that defendant's agent at Fort Worth was notified of plaintiff's contract of sale to Eby when the goods were delivered to the defendant, yet there are no allegations in that pleading to the effect that the defendant undertook and agreed to insure the plaintiff the performance of the contract by Eby.

While it is well settled by the decisions that a shipper has the right to designate the routing of a shipment at the time the goods are delivered for transportation, yet the allegations in plaintiff's pleading that the defendant failed to route the goods as directed become immaterial, in view of the fact that the proof conclusively showed that Eby did not refuse to consummate his contract of purchase by reason of such misrouting; in other words, it appears from testimony introduced by the plaintiff that his failure to accept the goods was by reason of their damaged condition after they reached Philadelphia.

We are unable to perceive how it can be said that the mere service of notice upon the defendant's agent that Eby had conditionally contracted to buy the goods for the sum of $7,000 if they should be shipped with reasonable dispatch and handled with proper care could, of itself, constitute a cause of action. The information so given could serve no other purpose than as a basis for the recovery of special damages as a consequence of the failure of the defendant's legal duty to handle the goods with ordinary care, and ship and deliver the same with reasonable dispatch, which duty was alleged in plaintiff's original petition. The facts so alleged as a basis for special damages were but incidental to the cause of action alleged in the original petition, but which could not

have been recovered in the absence of special allegations. The allegation of those facts could not, properly, be construed as an attempt to set up a cause of action separate and distinct from that pleaded in the original petition, nor as legally sufficient for that purpose, even if so intended. It was but a plea for the recovery of special damages resulting from and incidental to the breach of the contract of shipment alleged in the original petition, and plaintiff had the right to amend his cause of action, as originally pleaded, by alleging such special damages. In the absence of an amendment, he could not have proved such damages. Scoby v. Sweatt, 28 Tex. 714; Ft. W. Belt Ry. Co. v. Jones (Tex. Civ. App.) 182 S. W. 1185; Johnson v. Tex. Cent. Ry. Co., 42 Tex. Civ. App. 604, 93 S. W. 433; Scanlon v. Galveston, H. & S. A. Ry. Co., 86 S. W. 932; Baker v. G., C. & S. F. Ry. Co. (Tex. Civ. App.) 184 S. W. 257.

In the case of Phœnix Lumber Co. v. Houston Water Co., 94 Tex. 456, 61 S. W. 707, which is the leading case relied on by appellee to sustain the plea of limitation, plaintiff in his original petition sought a recovery for the loss of its property by fire, and based its action upon the breach of an alleged express contract by the water company to furnish adequate fire protection, and which breach resulted in the loss complained of. In its amended petition, the same relief was sought, but based on the breach of an implied contract of the defendant to the same effect as the express contract originally alleged. The defense of limitation to the amended petition was sustained, and in the opinion in that case the following was said:

"Four tests are laid down by which to determine the identity of the causes of action: (1) Would a recovery had upon the original bar a recovery under the amended petition; (2) would the same evidence support both of the pleadings; (3) is the measure of damages the same in each case; (4) are the allegations of each subject to the same defenses? 1 Am. and Eng. Enc. of Pl. and Pr. p. 556. We are of opinion that the second and last furnish the best tests by which to determine the matter before us, and we can safely say that if the same testimony would not support the allegations in each of these pleas, and that the same defenses could not be interposed to each of them, they are not identical, and therefore the amended petition presents a new cause of action. * * *

"Evidence of an express contract would not be admissible under the allegations of, and if admitted, would not establish, an implied contract, neither would the evidence from which the contract would be implied be admissible under the allegations of the original petition, nor would that evidence, if admitted, establish the existence of such a contract. * * *

"Against the original petition, the defendant could defend by disproving the making of the contract or by proving that it furnished the water according to the terms of the agreement. Proof that it did not make the express

contract would not be admissible, nor would it disprove the allegations of the implied contract contained in the amended petition; but in answer to the amended petition, the defendant would be required to meet a great number of circumstances and facts originating at different times and dates arising out of transactions by different persons in its employ, all of which would be inadmissible in answer to and would constitute no defense to the original petition. The obligation, under the express contract, would be to furnish water or to answer in damages for the failure to do so. Under the allegations of the implied contract, the defendant undertook to use ordinary care and such means as persons or corporations engaged in a like business would use to furnish water for like purposes."

Not only did the court fail to apply the third test there laid down, but in effect repudiated it, since it is clear that plaintiff's measure of damages under the original petition and under the amended petition was exactly the same, to wit, the value of the property lost by fire. The first test stated, if given effect, in this case, did not determine the question adversely to plaintiff, since it cannot be doubted that a recovery of damages on the original petition, measured, as they would have been, by the difference between the value of the goods in the condition and at the time they arrived in Philadelphia and at that place, and what they would have been worth had they been shipped with reasonable dispatch and handled with ordinary care, would have been a bar to another suit for the special damages alleged in his amended pleadings. The second and fourth tests were given controlling effect in the decision of the question determined in the Phœnix Lumber Co. Case, supra, and of the two, the second was given prime importance, since the fourth was treated as subsidiary to the second and was looked to merely to determine whether the same obligation was relied on as a basis for recovery in each of the two pleadings. It was held that a suit upon an express contract to perform a service was a different demand from one based on an implied contract to perform the same service, because the two obligations' were legally different, and the same proof would not establish both. The fourth test, to wit, whether the allegations in each pleading are subject to the same defense, is an incident to the second test, and really a part of it, since its only purpose is to determine whether or not the obligation relied on in the first pleading as a basis for recovery is the same as that alleged in the second pleading, for the same purpose. And that test was so construed and discussed in that case. In that decision, evidently, the term "cause of action" was understood as having the meaning defined in 1 Bouvier's Law Dictionary (Rawle's 3d Ed.) p. 436, as follows:

"Stated in brief, a cause of action may be said to consist of a right belonging to the plaintiff and some wrongful act or omission done by defendant by which that right has been violated. Pom. Rem. § 453."

According to such authorities, which seem sound, the rule seems to be that whether or not the right, whether arising upon contract, tort, or otherwise, which is asserted by the plaintiff, and the violation of which is charged to the defendant, and upon which plaintiff bases his right of recovery, is legally the same in both pleadings, is the primary and controlling question; and all the four tests, stated in the opinion, when applied, are incidental and ancillary thereto, and are looked to for the purpose of correctly determining that question, the answer to which satisfies all those tests.

The term "pleadings" mentioned in the second test was construed as meaning only that part of the pleading which alleged defendant's obligation to plaintiff, and the breach of which was made the foundation of the action. To say that in order to avoid the defense urged to the amended pleading, on the ground that it set up a new cause of action which was barred by the statute of limitation, which was not applicable to the cause alleged in the former pleading, it must appear that the same evidence, in its entirety, admissible on the amended pleading, would support both pleadings, would be to deny plaintiff, in many instances, the benefits of his statutory right to amend his pleadings by allegations of some fact which are incidental to and constitute a part of the cause of action already pleaded.

Accordingly, we conclude that defendant's plea of limitation should have been overruled.

Nor do we concur in the contention urged by the appellee that no evidence was introduced legally sufficient to serve as a basis for allowing plaintiff any damages whatever.

We have failed to discover evidence sufficient to enable the court to determine the difference between the market value, if any, of the goods at the time they arrived in Philadelphia in the condition they were then in, and what would have been their market value at the same place and time, if they had any, if they had not been negligently handled, which difference would have been the measure of damages under the original petition. But plaintiff relied on his claim for special damages, the basis of which claim was alleged in his amended pleadings. He testified that at the time he delivered the goods for shipment, he showed defendant's agent the letters he had received from Eby, in which the latter made a conditional offer to purchase the goods, and further testified, in effect, that he expected to sell them upon the terms and at the price conditionally offered, and that in order to consummate the sale he desired the shipment to be routed by Indianapolis with privilege for a later rout-

ing by Detroit in order to consummate a sale to Eby at one or other of those points if he desired delivery there. Those letters were set out in full in the opinion of the court on the former appeal.

Plaintiff further testified that thereafter, and before the goods arrived in Philadelphia, he and Eby definitely agreed that Eby would buy the goods for a consideration of $7,000 and pay $3,000 cash and execute his notes for the balance in the sum of $75 payable monthly, each drawing interest at the rate of 6 per cent. per annum from date and secured by a chattel mortgage on the goods.

[3] Other testimony tended to show that Eby after inspecting the goods at Philadelphia refused to take them, solely because of their damaged condition. Plaintiff also testified that the goods had no market value when they were delivered. He sought a recovery for the contract price which Eby had conditionally agreed to pay. But on the former appeal it was held, and correctly so we believe, that his measure of damages for the loss of the benefits of that contract would be the cash value of the contract and not necessarily the contract price, since the same was partly for deferred payments evidenced by promissory notes, the cash value of which would have to be proven by testimony aside from the face of the notes themselves. In estimating the value of the contract, necessarily, the solvency of Eby and the value of the security would be important factors, as well as the possible discount that might be necessary in order to realize cash for the notes which Eby had agreed to execute for part of the purchase money. We are cited to no evidence on the last trial to show the cash value of those notes save their face value, and the fact that they were to draw 6 per cent. interest and to be secured by a lien on the goods. But if Eby would have purchased the goods for $7,000 by paying $3,000 cash and by executing his notes for the balance had they been shipped and handled with ordinary care, as the evidence tended to show, then it cannot be said that there was no proof of any cash consideration that plaintiff would have realized from his proposed sale. The proof that $3,000 cash would have been paid, and the further testimony of plaintiff that the goods had no market value when they were delivered to him in Philadelphia, would have furnished a sufficient basis for awarding some damages, and for a proper measure of the same. By reason of that evidence, aside from a consideration of any other, we conclude that the trial court erred in taking from the jury the issue of actual damages sustained.

[4] The measure of plaintiff's special damages, alleged in his petition, in the event the goods had never been delivered to him at all, would have been the value of his bargain with Eby, the benefits of which he lost by reason of defendant's negligence in failing to handle the goods with ordinary care. But since the goods were delivered to him, although in a damaged condition, the measure of such damages would be the difference between the value of the goods in their damaged condition when received and at the place of destination, and the amount he would have received had Eby consummated his conditional contract of purchase, since compensation would be the measure of his loss. If the goods had any value when received, he could not retain them as his own and at the same time recover of the defendant the price which Eby had agreed to pay for them, since in that event he would realize more through defendant's negligence than he would have realized if the shipment had been handled with proper care. 4 R. C. L. p. 937, and authorities there cited.

[5] Appellee objected to the testimony of the plaintiff to the effect that when the goods arrived in Philadelphia, by reason of their damaged condition they had no market value. The objection so made was upon the ground that plaintiff had not shown himself qualified to give such testimony, by reason of a lack of proper knowledge of the market value of such goods at that time and place. And appellee now insists that that objection should have been sustained, and that even though the testimony was admitted over the objection, the same was legally incompetent and insufficient to serve as a basis for any judgment that might have been rendered awarding damages, on any theory of the case. In support of that contention, appellee has cited such cases as Henry v. Phillips, 105 Tex. 459, 151 S. W. 533; G. & G. N. Ry. v. Startz, 97 Tex. 167, 77 S. W. 1; Texas Midland Ry. v. Cummer (Tex. Civ. App.) 207 S. W. 617; Feingold v. Lefkovitz (Tex. Civ. App.) 147 S. W. 346; and other cases. We cannot concur in that contention.

It has been held that even hearsay testimony had probative force and will support a judgment when admitted, and the testimony of plaintiff just referred to is of that character, even if it be said that the witness had not sufficiently qualified to give the opinion expressed. Daniel v. Harvin, 10 Tex. Civ. App. 439, 31 S. W. 421; Gray v. Fussell, 48 Tex. Civ. App. 261, 106 S. W. 454; Fred Harvey v. Comegys (Tex. Civ. App.) 233 S. W. 601. But such cannot be said of the testimony discussed in the cases cited by appellee, which was held to be legally incompetent for any purpose even though admitted without objection. Moreover, it would be manifestly unjust to the plaintiff for the court to admit such testimony over the objection urged thereto, and thus, perhaps, cause him to fail to introduce other testimony to prove the same fact, and, later, without striking out the testimony, deny him a recovery upon the theory that the testimony admitted was inadmissible and incompetent to prove the fact sought to be established.

And it may be added that we believe the evidence tended also to sustain the allegations of actionable negligence contained in plaintiff's original petition and on which a recovery was sought.

For the reasons indicated, the judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

In view of the action of the court in overruling objections to plaintiff's testimony to the effect that the goods upon arrival in Philadelphia had no market value, upon the ground that the witness had not shown himself legally qualified to express an opinion on the subject, and on the further ground that his testimony as to that issue appeared to be based on hearsay statements of others, and in view of the further action of the court in overruling defendant's motion, made later, to strike out that testimony, we think it reasonable to conclude that the peremptory instruction to the jury to return a verdict for the defendant without stating his reasons therefor, and without announcing a reversal of his former rulings, was based on the conclusion which is suggested by appellant that plaintiff's cause of action then on trial was barred by the statute of limitation, which was pleaded as a defense. The court having twice ruled that that testimony was admissible, it cannot be presumed he later reached a different conclusion and directed a verdict in favor of the defendant for lack of competent proof of the measure of plaintiff's damages, without notice to his counsel of his changed conclusion, and that, too, on defendant's motion for such an instruction which failed to allege any grounds or reasons why such an instruction should be given. We said that such testimony when admitted would have probative force with the jury, but we did not hold, and do not now hold, that the same would be competent proof of the measure of plaintiff's damages. On the contrary, we said, in effect, that plaintiff failed to offer competent proof as a basis for determining the difference between the market value of the goods in Philadelphia in the condition they arrived and at the time of their arrival, and what would have been their market value at the same time and place in the condition they would have arrived, if handled with ordinary care, which would have been the proper measure of damages under plaintiff's original petition. But we further concluded, and are still of the opinion, that the peremptory instruction in defendant's favor could not be sustained on the ground of a lack of any competent evidence of the amount of the special damages alleged in the supplemental petition, in view of positive testimony introduced to the effect that Eby would have purchased the goods in Philadelphia and would have made a cash payment thereon of $3,000, but for their damaged condition, which other evidence tended to show resulted from negligent handling during shipment.

Appellee urgently insists that we erred in our former conclusion that plaintiff's cause of action was not barred by the statute of limitation of two years. At the outset, we will say that we were in error in our opinion on original hearing in stating that the defense of limitation was not urged in defendant's pleadings on the former trial. Upon further examination of the pleadings, we find that the reverse of that statement is true, although that defense was not discussed by the Court of Civil Appeals in its opinion rendered upon the former appeal.

It is contended that in plaintiff's original petition only an implied contract of shipment was relied on, while in the supplemental petition an alleged oral contract of shipment was made the primary basis for a recovery. In the original petition it was alleged that the goods were delivered to the defendant for transportation from Fort Worth, Tex., to Philadelphia, Pa.; that at the time of delivery defendant "then and there agreed to route and waybill said shipment," as stated in our original opinion. Following allegations of a breach of its agreement to so route and waybill the goods, the petition contains these allegations:

"That by reason of said delivery to the defendant of said goods, wares and merchandise, and by reason of its acceptance of the same, the said defendant then and there understood and promised, and it became its duty to transport the same with all reasonable dispatch to St. Louis in the state of Missouri, and there deliver the same to the Vandalia Railroad Company, which would have carried the same to Indianapolis and on to Philadelphia," etc.

Then follow allegations of misrouting, delay in shipment, injury to the goods during shipment, demand of excessive freight charges by the delivering carrier as a condition for delivery to plaintiff, and before he was allowed to inspect them payment of the amount demanded by plaintiff in order to get them, his tender of the goods back to the delivering carrier after he discovered their damaged condition. Following those allegations, the petition contained the further allegations set out in our original opinion which concluded the original petition and which was the only portion of that petition in which the amount of damages to the goods was alleged.

While it is true that the allegations quoted above amounted to a declaration on an implied contract to ship, we think it equally true that those contained in the concluding part of the petition were sufficient to allege an express contract of shipment, and that under the latter allegations proof of an express oral contract would have been admissible, just as under the allegations in the supplemental petition.

Several authorities are cited by appellee

to support the contention, which is very earnestly pressed, that the claim for special damages asserted in plaintiff's supplemental petition was the assertion of a new cause of action which was barred by the statute of limitation of two years. The decisions chiefly relied on by appellee will now be reviewed.

The case of Texas Company v. Alamo Cement Co. (Tex. Civ. App.) 168 S. W. 63, was a suit by the Texas Company, as plaintiff, against the Alamo Cement Company as defendant, to recover the price of fuel oil sold by plaintiff to defendant. In a cross-action defendant alleged that the oil, the price of which was sued for, was purchased under a contract by the terms of which plaintiff agreed to sell and furnish all the oil that defendant might need for six months in the operation of its cement factory, but that plaintiff had breached that agreement, and a recovery was sought for that breach for the difference between the contract price and the amount defendant had been compelled to pay for such deficiency of oil which it had purchased from other sources. More than two years after the making of the contract, defendant filed an amended counterclaim in which, in addition to the damages theretofore claimed, it sought to recover special damages consisting of loss of profits and added expenses by reason of a shut down of its plant while waiting for fuel oil to be obtained from other dealers; it being alleged in that connection that notice of such special damages to defendant by reason of such breach of contract was given to plaintiff at the time the contract of sale and purchase was entered into. A plea of the two years' statute of limitation to the claim for special damages was sustained by the Court of Civil Appeals at San Antonio, but it does not appear that an application for writ of error was ever made to the Supreme Court from that decision. The decision in Phoenix Lumber Co. v. Houston Water Co., 94 Tex. 456, 61 S. W. 707, was cited in support of the conclusion reached, and it appears that the same was given controlling effect, although other decisions also are cited. But it was stated that no authority directly in point had been found. Other decisions cited in support of that conclusion were Lee v. Boutwell, 44 Tex. 151; Railway v. Bracht (Tex. Civ. App.) 157 S. W. 270; Whalen v. Gordon, 95 Fed. 305, 37 C. C. A. 70; Townes, Texas Pleading (2d Ed.) 454 to 457; Fairbanks v. Smith (Tex. Civ. App.) 99 S. W. 705; Ft. Smith v. Fairbanks, 101 Tex. 24, 102 S. W. 908.

The decision in Lee v. Boutwell, supra, we believe, supports our former conclusion in the present suit, even if it be said that plaintiff's original petition was solely on an implied contract of shipment. That was a suit by Boutwell to recover damages for the breach of Lee's express oral contract to give Boutwell a certain portion of the increase of a stock of horses in consideration of his undertaking to care for and attend the same for three years, which service was performed by him at considerable expense, and also for breach of Lee's further contract to pay him $350, which was awarded to him by arbitrators, to whom the controversy had been referred under Lee's agreement to pay the amount which they would award to Boutwell. The petition also contained a prayer for general relief. By an amended petition, which was filed more than two years after the cause of action accrued, in addition to the facts already pleaded, except the award made by the arbitrators, plaintiff sought to recover the value of his services and expense incurred in caring for and attending the horses. The Supreme Court held that the new demand was not barred by the two years' statute of limitation which was pleaded. It thus appears that the suit as originally filed was on an express oral contract, and that the additional demand set up by the amendment, which was upon a quantum meruit and predicated upon an implied contract, was not the assertion of a new cause of action, although the value of the services and amount of expenses and plaintiff's implied contract to pay same were set up for the first time in the amended cross-plea, and the amendment clearly pleaded a measure of damages different from that invoked by the original petition. And that decision has been cited with approval in numerous decisions of our appellate courts, including Schneider v. Sellers, 98 Tex. 391, 84 S. W. 417; W. U. Tel. Co. v. Brown, 62 Tex. 540; Hughes Bros. v. Smith, 83 Tex. 501, 18 S. W. 955; and Ball v. Britton, 58 Tex. 63. And in the case last mentioned an amended petition setting up an enlarged measure of actual damages and also exemplary damages for the breach of a contract was held not to assert a new cause of action that was subject to the defense of limitation.

In Whalen v. Gordon, supra, the original petition was for damages for breach of warranty in a contract of sale, while the amended petition, which was held to assert a new cause of action that was barred by limitation, was for rescission of the contract, and recovery of purchase price paid by plaintiff. That decision also is clearly distinguishable from the one now before us. Fairbanks v. Smith, supra, is likewise not applicable, since the only question determined on the issue of limitation was when the cause of action based on an implied warranty of fitness of machinery purchased arose; and the same may be said of the decision in Fort Smith v. Fairbanks, supra.

In M., K. & T. Ry. Co. v. Ryan, 170 S. W. 858, the Court of Civil Appeals at Dallas, following Phoenix Lumber Co. v. Houston

Water Co., 94 Tex. 456, 61 S. W. 707, held that an amended pleading, upon a quantum meruit for value of service rendered, set up a new cause of action which was barred by limitation; the original petition being upon an express contract to pay a specific sum for the same services. It appears to us that this decision is likewise in conflict with Lee v. Boutwell, supra. And in Griffin v. Allison, 138 S. W. 1068, the same court held that an amended petition asserting a claim for damages resulting from the sale to plaintiff of glandered horses, from which the disease was communicated to other horses owned by him, set up a new cause of action which was barred by limitation, by reason of the fact that in that petition it was alleged for the first time at the time of the sale defendant knew or had good reason to believe that the horses he sold were then afflicted with that disease, while in the original petition, which was not barred, it was alleged that defendant then knew that the horses were so diseased, and willfully caused the injury complained of, citing the Phœnix Lumber Co. Case, and quoting the four tests there announced for determining whether an amended pleading sets up a new cause of action, and also Biggins v. Ry. Co., 102 Tex. 417, 118 S. W. 125. And in the opinion the following was said as one of the reasons for the conclusion reached:

"The measure of damages is different, if the act of defendant was intentionally and willfully done, he would be subject to exemplary damages, while if only negligently done, he would not be so liable."

In thus holding that a claim for exemplary damages was a new cause of action, that decision was in conflict with the decision of the Supreme Court in Ball v. Britton, 58 Tex. 63, noted above.

In Scott v. Willis, 194 S. W. 220, the Court of Appeals at San Antonio held that an amended petition based on an implied contract set up a different cause of action from that asserted in the original petition, which was based on an express contract to perform the same services, citing in support of that holding the Phœnix Lumber Co. Case.

To the same effect was the decision in Thames v. Clesi (Tex. Civ. App.) 208 S. W. 195, in which the Phœnix Lumber Company Case among others, was cited. The same ruling on like pleadings was also made in Kuhn v. Shaw (Tex. Civ. App.) 223 S. W. 343.

The three last-cited decisions also seem to be in conflict with Lee v. Boutwell, supra. And it may be added that so far as we have been able to discover, none of the decisions of the Courts of Civil Appeals cited by appellee and discussed above have ever been approved by our Supreme Court.

The following authorities hold that an amendment alleging a ground of negligence

additional to that alleged in the original complaint does not amount to the statement of a new cause of action. G., H. & S. A. Ry. v. Perry, 38 Tex. Civ. App. 81, 85 S. W. 62, in which a writ of error was denied by our Supreme Court, and cases there cited. To the same effect are Chobanian v. Washburn Wire Co., 33 R. I. 289, 80 Atl. 394, Ann. Cas. 1913D, p. 730, and numerous decisions cited in the opinion in that case. And see also note to that decision with many decisions cited, begining on page 742 of last book cited.

In view of the familiar rule that any distinct allegation of negligence which is established by proof, and which is the probable cause of an injury, will support a recovery, it follows that the negligence which is averred for the first time in the amended petition may be the only basis for the judgment rendered. And since that would be the primary basis for a recovery, we perceive no valid reason for saying that the claim for special damages made in the present suit by the supplemental petition amounted to the assertion of a new cause of action.

In addition to authorities already cited, we wish to call attention to the following: Thouvenin v. Lea, 26 Tex. 612; G., C. & S. F. Ry. v. O'Neill, 32 Tex. Civ. App. 411, 74 S. W. 960; I. & G. N. Ry. v. Dalwight (Tex. Civ. App.) 56 S. W. 136; I. & G. N. Ry. v. Irvine, 64 Tex. 529; Case v. Blood, 71 Iowa, 632, 33 N. W. 144; 25 Cyc. 1310; Fidelity Title & Trust Co. v. Dubois Elec. Co., 253 U. S. 212, 40 Sup. Ct. 514, 64 L. Ed. 865. Tynberg v. Cohen (Tex. Civ. App.) 32 S. W. 157, was a suit for damages for the wrongful levy of an attachment, and in discussing the defense of limitation to facts alleged in an amended petition, Justice Williams, later associate justice of our Supreme Court, said:

"The cause of action was the levy of the attachment, upon which the suit, from the first, had been based. The amendment simply specified in detail the special damages claimed as the result of such levy. The original suit suspended the operation of the statute against the cause of action, and it was competent, by amendment, to expand the claim for damages. Railway Co. v. Irvine, 64 Tex. 529; Scoby v. Sweatt, 28 Tex. 714." (Italics ours.)

The Supreme Court denied a writ of error prosecuted from that decision.

We will say further that we do not believe there is any conflict between the decisions in the Phœnix Lumber Co. Case and Lee v. Boutwell, since in the former the controlling issue presented in the amended pleading which was held to present a new cause of action was that of negligence, which is determined by the law of negligence, as distinguished from an express contract alleged in the original petition the breach of which caused the same injury, while in Lee v. Boutwell the pivotal issue both in the original and amended petition was that of contract

only, express in the original petition and implied in the amended petition. In the present suit the evidence failed to show any damages for failure to route the goods as plaintiff directed, but there was evidence tending to show damages suffered from failure of defendants to handle the goods with ordinary care. The defendant owed that duty just the same whether the shipment was under an implied contract of shipment or under an express oral contract to ship, and the same defenses were applicable to both contracts, as to this issue. Furthermore, proof of the delivery and acceptance of the goods for shipment as alleged in the supplemental petition would establish such liability the same as under the original petition without further proof of the express oral contract of shipment also alleged in the amendment, and thus the test given controlling effect even in the Phœnix Lumber Company Case was satisfied.

The motion for rehearing is overruled.